Eileen H. DARDICK, Appellant,

v.

Leon M. DARDICK, Respondent.

No. 70455.

Missouri Court of Appeals,
Eastern District,
Division Two.

July 15, 1997.

Michael C. Walther, Craig G. Kallen, The Walther Law Firm, St. Louis, for appellant.

Louis J. Basso, Louis H. Basso, P.C., St. Louis, for respondent.

GERALD M. SMITH, Judge.

Wife, Eileen Dardick, appeals from a decree of dissolution. She questions the validity of an antenuptial agreement, the disposition of property and the failure of the court to award her maintenance. We affirm.

Husband and wife met in 1978, when husband was still married to his first wife.[1] Husband and Eileen were married in 1982 in California. Prior to their wedding the parties executed an antenuptial agreement. It provided that it was to be construed and governed by California law. It was wife's testimony that the agreement was entered into to protect wife's assets from a possible alienation of affections action by husband's first wife. The court found the agreement valid under both California and Missouri law. It found that wife executed it after consultation with her legal counsel, that she had full knowledge and understanding of the agreement, and that she had carefully read the document. Those findings were fully supported by evidence before the court.

■ Wife attacks the validity of the agreement on three bases. She bears the burden of establishing invalidity. *In re Marriage of Iverson,* 11 Cal.App.4th 1495, 15 Cal.Rptr.2d 70 (1992)[3]. First she contends that husband did not disclose all of his assets. Specifically, she contends that his employer had promised to pay him $500,000 at some time in the future if he was still employed by the company at the time the company merged or was acquired by some other company. In 1984 husband received from the owner of his employer stock having approximately that value when the owner's company was acquired by another company. Wife contends this was part of husband's employment contract; husband contends the stock was a gift from the owner of the company to him. The court characterized the stock as compensation for services rendered, which was conditioned on continued employment with the company. We find it makes no difference. It is clear that the award, whatever its characterization, was contingent upon two conditions—husband's continued employment with his employer and acquisition of the employer by another entity. It was not an asset of the husband at the time of the execution of the antenuptial agreement and if one or both of the conditions did not occur would never become an asset. The

occurrence of the conditions was mostly out of the control of husband. We are unable to conclude that husband's failure to advise wife of such a speculative possibility amounts to non-disclosure.

■ Secondly, wife contends that the agreement was unconscionable. Under California law, if the party voluntarily executed the agreement then to establish unenforceability, she must establish unconscionability *and* non-disclosure. California Family Code Section 1615(1994). Wife having failed to establish non-disclosure did not establish unenforceability. In addition, in California unconscionability is defined as "whether, in light of the general background and needs of the particular case, the provisions involved are so one-sided as to be unconscionable under the circumstances existing at the time the contract is made." Legislative Committee Comment to California Family Code Section 1670.5 (1985). Unconscionability is a question of law. California Family Code Section 1615(b)(1994). The circumstances at the time of making the contract were: (1) wife had an attorney of her own choosing who actually drafted the agreement, (2) wife had worked as a legal secretary and was not ignorant of the law, (3) wife knew husband was contesting the distribution of property in his first divorce and reasonably would be trying to protect himself in a second marriage, (4) while husband had more assets than wife, wife did have substantial separate property and the training and education to make an adequate living. The agreement provided:

2. Eileen agrees that any and all property which Lee may hereafter acquire, including property resulting from his personal services, skills, and efforts, shall be and remain the sole and separate property of Lee. Eileen acknowledges that she voluntarily relinquishes all interest in such property and understands that property which in the absence of the Agreement, may be community property or other property in which she has an interest shall be and remain the sole and separate property of

---

**1.** Final resolution of the financial aspects of that marriage were addressed in *Dardick v. Dardick,* 670 S.W.2d 865 (Mo.banc 1984).

Lee and property in which she has no interest.

3. (Exactly the same except for reversal of the parties' names)

4. The parties agree that any property that they may hereafter acquire in their names jointly shall, unless otherwise expressly agreed in writing signed by both parties, be one-half the sole and separate property of each of the parties.

Under the circumstances set forth above and in view of the provisions of the agreement, it was not so one-sided as to be unconscionable.

Wife also contends the agreement was abandoned. Nothing in the record supports such a contention.

Wife also challenges the distribution of certain assets. This she does because husband shortly after the marriage opened bank accounts in both husband and wife's names. The testimony was that the accounts were to allow wife to write checks for household expenses. Wife deposited no money into the accounts; it all came from husband. Wife had separate accounts into which her income went. Husband utilized the joint account to purchase the marital home and investments. It is wife's contention that once husband's separate property was placed into the joint accounts it was converted into marital property and thus assets acquired through the joint accounts were purchased with marital funds.

■ None of the cases relied upon by wife involved a premarital agreement. Under both Missouri and California law, when there is a premarital agreement, the character of the property as community/marital or separate is not determined by the presumptions set forth by statute or case, but by the terms of the contract. *In re Marriage of Dawley,* 17 Cal.3d 342, 551 P.2d 323, 131 Cal.Rptr. 3 (Cal. banc 1976)[16,17](citing California Civil Code section 5133); *Gould v. Rafaeli,* 822 S.W.2d 494 (Mo.App.1991)[1] (noting that by statute in Missouri, section 452.330.2(4) RSMo 1994, marital property does not include property excluded by valid agreement of the parties). The agreement here clearly provides that property acquired

by husband remains the sole and separate property of husband, and that property which, in the absence of the agreement, might be community property or other property in which wife might have an interest (marital property under Missouri law) remains the sole and separate property of husband.

None of the assets acquired by husband were acquired in joint names thereby triggering the provisions of paragraph 4 above quoted. The creation of a joint account to facilitate wife's household spending did not convert purchases made through use of funds in the joint account into marital property in view of the express provisions of the agreement.

■ Finally, wife contends the court erred in failing to award her maintenance. Prior to the marriage, she had been engaged in a sexual relationship with a married man. That relationship continued throughout the thirteen year marriage, unbeknownst to husband. Wife stated to friends that she was continuing her marriage to husband only until he had paid for the college education of her two sons from a former marriage. Husband paid for such education. After the separation wife returned to her lover. Wife had income from her own property which produced an income of $1500 per month. The trial court found that she had made no efforts to find employment within her fields of training and that she was capable of finding legal secretary employment which would have provided her with an income of at least $20,000 annually. The court's findings were fully supported by the evidence. We find no abuse of discretion in the court's denial of maintenance to wife.

Judgment affirmed.

CRANE, P.J., and PUDLOWSKI, J., concur.