Melody TROUT and Benjamin Trout, by his next friend, Melody Trout, Plaintiffs–Appellants,

v.

GENERAL SECURITY SERVICES CORPORATION, Defendant–Respondent,

and

B.I. Incorporated, Defendant.

No. 22818.

Missouri Court of Appeals, Southern District, Division Two.

Oct. 21, 1999.

Rehearing Denied Nov. 8, 1999.

Michael Moroni, Bloomfield, for Appellants.

G.N. Beckemeier, Jr., Robert S. Sanderson, Holtkamp, Liese, Beckemeier & Childress, P.C., St. Louis, for Respondent.

JAMES K. PREWITT, Judge.

Plaintiffs appeal from summary judgment adverse to them in their claim against Defendant General Security Services Corporation. Pursuant to Rule 74.01(b), the trial court found no just reason for delay, making its decision appealable.

Appellants are the widow and infant son of Gary Trout. At approximately 10:30 p.m. on August 29, 1996, Billy D. Wyatt drove his vehicle across the center line of Route U.S. 61, in Scott County, colliding with a vehicle driven by Gary Trout. Both Wyatt and Gary Trout were killed as a

result of the collision. Wyatt, on parole with the Missouri Department of Corrections (hereinafter the "Department"), was intoxicated at the time of the collision. Wyatt had been convicted in April of 1994, on two counts of driving-while-intoxicated, and was sentenced to five years' incarceration. The Department placed Wyatt on a home detention plan under its Electronic Monitoring Program on August 16, 1996, thirteen days prior to the collision.

The Electronic Monitoring Program (hereinafter the "Program") was administered with the assistance of General Security Services Corporation, (hereinafter GSSC), Respondent in this appeal. The electronic monitoring equipment was manufactured by co-defendant, B. I., Incorporated, who is not a party in this appeal. The monitoring equipment consisted of an ankle bracelet transmitter attached to Wyatt and a receiver unit placed in his home. The receiver unit was connected to his phone line to transmit information to GSSC's monitoring station. Under the Program in existence in 1996, the Department established curfews for each person based upon that person's employment status and treatment. During the curfew hours, if the person was not within a radius of 150 feet when a signal transmits, he was in technical violation of the terms of his plan. Under guidelines set by the Department, GSSC was to monitor curfew violations and attempt to contact the person by phone when the transmitter indicated that he was out of range. If GSSC did not get a response from him, it was to call the Department to notify them of the violation.

The evening curfew for Wyatt on the day of the collision was 10:00 p.m., and at that hour, Wyatt's electronic monitoring equipment detected that he was in violation of his curfew. At 10:20 p.m., the equipment detected that he remained in violation of his curfew, at which time GSSC placed a call to Wyatt's residence, as was required by the Program. After attempting and failing to contact Wyatt again at 11:06 p.m., GSSC notified the Department of the curfew violation.

Appellants filed this matter against GSSC, as well as Wyatt's estate, State Farm Mutual Automobile Insurance Company, and B.I. Incorporated. The Amended Petition sets forth three claims against GSSC: negligently failing to monitor Billy Wyatt; negligently supplying a dangerous instrumentality; and breach of contract upon a third-party beneficiary theory. GSSC filed a motion for summary judgment on November 6, 1998, as to all three claims asserted in the petition. A hearing was held on the motion, and on January 22, 1999, the trial court entered its order granting GSSC's motion for summary judgment on all claims asserted against it.

 Summary judgment is a proper remedy when the moving party demonstrates that there are no genuine issues of material fact and that the party is entitled to judgment as a matter of law. *Podlesak v. Wesley,* 849 S.W.2d 728, 731 (Mo.App. 1993). Our review of the judgment is *de novo.* *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo.banc 1993). "Genuine issues" exist when the record contains material that raises plausible but contradictory views of the essential facts. *Id.* at 382. Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. *Id.* at 376.

Appellants admitted the allegations in 15 of the 17 paragraphs contained in GSSC's motion for summary judgment. The essence of the admitted paragraphs are stated in the facts set forth in this opinion. The two paragraphs denied by Appellants concern the issues of the proper functioning of the electronic device, the contractual obligations of GSSC, and the proper determination of persons for the Program.

Appellants' first point relied on relates to alleged trial court error in sustaining GSSC's Motion for Summary Judgment as

to Count I regarding allegations of negligence in the monitoring of Wyatt. Appellants first argue that they are entitled to the benefits of the doctrine of spoliation because GSSC did not preserve the bracelet, but sold it to a company in California. Missouri has enforced an evidentiary spoliation inference that applies when there is intentional destruction of evidence, indicating fraud and a desire to suppress the truth. *Brown v. Hamid,* 856 S.W.2d 51, 56–57 (Mo.banc 1993). "If applicable, destruction of evidence without a satisfactory explanation gives rise to an inference unfavorable to the spoliator." *Id.* at 57.

Appellants assert that it is undisputed that the attorney for GSSC received an interrogatory that sought to ascertain "where the monitor was located" prior to the sale. Appellants' references to the transcript to support this allegation fail to do so. One reference is to a statement given by Appellants' attorney, asserting to the court that after the interrogatory had been sent to GSSC, the ankle bracelet was sold. The second reference to the transcript is to a statement made to the court by an attorney for GSSC; however, he does not say that the interrogatory was received prior to the sale.

Appellant also directs this Court to two references in the legal file. Again, neither supports Appellants' claim. One reference is to an affidavit of Dennis Doffing that his first notice that Appellants wished to examine the bracelet worn by Wyatt was in October of 1997, when he received a copy of the interrogatory from GSSC attorneys. Such testimony supports GSSC's position. The second reference is to GSSC's "Supplemental Answer to Plaintiffs' Interrogatory 21," the relevant interrogatory. The file stamp on this answer bears the date "Nov 25 1998." The record does not contain a copy of the interrogatories containing question number 21, so we cannot know that it was filed prior to the sale of the bracelet, only that the answer was filed after the sale.

■ The record on appeal shall contain all of the record necessary to the determination of all questions presented. It is appellant's duty to prepare the legal file. Rule 81.12(a), (c). This court will not entertain unsupported contentions. We cannot accept the statements in a party's brief as a substitute for the record on appeal. *Northern v. Northern,* 837 S.W.2d 579, 580 (Mo.App.1992). Assuming but not deciding that the doctrine of spoliation might not apply here, because the record does not support Appellants' argument made under and as part of this point, we do not consider the argument further.

■ Appellants' second argument under Point I is that there is a question of fact as to whether Wyatt's monitoring equipment was working properly. Appellants rely on the deposition of Kimberly Williams, Wyatt's probation officer, who testified that there had been problems with the monitoring device giving a false signal that he was not home when he was home. She also testified that there never was an instance of the device indicating he was home when he was not. Williams testified that moving the receiver away from the washer and dryer corrected these false signals.

Appellants argue that if the device had been properly installed, it could have monitored Wyatt while he was at his place of employment, which was a garage next door, and therefore, there would have been no need to establish a curfew. GSSC adamantly disagrees with the allegation that the curfew was established to accommodate the operation of the bracelet. Information contained within the enrollment form for "Electronic Monitoring Client Listing" supports GSSC's position. That form was submitted on August 16, 1996, Wyatt's first day on the Program, which was necessarily before any false signals were received. The client listing of that date established a curfew schedule consistent with the curfew schedule Wyatt remained on at the time of the collision.

Appellants further contend that there is a question of fact as to whether GSSC was in compliance with the terms of its contract with the Department. Appellants allege various clauses in the contract were not met: that GSSC will "meet and exceed" the standards set by the Department; that GSSC promised "to do whatever it takes to get the job done with a high degree of quality"; that GSSC will provide a system which must be capable of continuously monitoring eligible offenders as identified by the Department anywhere within the state; and that a method must be implemented by which the offender's curfew compliance can be verified.

The facts presented show that the monitoring device was able to detect that Wyatt left his home at approximately 4:00 p.m. on August 29, 1996, which was permissible under his curfew, and detected that he did not return home by 10:00 p.m. that day. GSSC did provide monitoring equipment required by the Department and did report curfews according to the protocol established by the Department. The evidence does not support Appellants' allegations of noncompliance.

Finally under this point, Appellants allege GSSC is not entitled to protection under the state's sovereign immunity because GSSC was negligent. The theory allowing a private contractor to share a public body's immunity from liability for damages requires the non-negligent performance of a contract. Where an independent contractor performs his work in accordance with the specifications of the contract, and is guilty of neither negligence nor willful tort, he is not liable for any damage that may result. *Rector v. Tobin Constr. Co.*, 377 S.W.2d 409, 413 (Mo.banc 1964). See also § 537.600, RSMo 1994.

As discussed above, we do not find factual disputes regarding the manner in which GSSC performed under the contract. Appellants do disagree as to whether that manner was negligent, but their assertions of negligence pertain to the type of monitoring equipment used in the Program and the terms and conditions of participation in the Program. These are not allegations of negligence of GSSC's performance of the contract, but are allegations of negligence in the selection of the monitoring equipment and the design of the Program. Those decisions were made by the Department, and not by GSSC. Therefore, because GSSC was not negligent in its performance under the contract, it is entitled to any protection available under the state's sovereign immunity.

While there may be some facts in dispute in this matter, none preclude summary judgment. Point I is denied.

Appellants' second point relates to Count IV of the amended petition. In this point, Appellants claim that GSSC was negligent in supplying a dangerous instrumentality based upon Restatement (Second) of Torts § 392. The elements of this tort are set forth in M.A.I. 25.10(B). One necessary element is that the instrumentality was in some way defective and therefore dangerous when put to a reasonably expected use. We have previously concluded that the ankle bracelet was not defective, and that the false alarms it had previously sent were corrected by placing the receiver in another location within the house. Even when a false alarm is considered a "malfunction," that does not lead to the conclusion that the instrument itself was dangerous. The device itself was not the dangerous instrumentality, but Wyatt may well have been. Point II is denied.

The third point (Count V in the Amended Petition) against GSSC alleges a breach of contract based upon third-party beneficiary status. Appellants labeled Count V as a "Breach of Contract Against GSSC." The count, in its entirety was written as follows:

1. That Defendant General Securities Services Corporation did have a contract with the State of Missouri to [p]ro-

vide continuous monitoring services of individuals such as Billy Wyatt.

2. That plaintiffs are third party beneficiaries to the contract.

3. That defendant did breach the contract and as a direct result thereof Gary Trout was killed and plaintiffs were damaged in and amount of at least $3,000,000.

Appellants assert that they are third-party beneficiaries under the factors set forth in *Westerhold v. Carroll*, 419 S.W.2d 73, 81 (Mo.1967). Their argument is that the potential class of claimants in this case is limited "to those persons who would reasonably be expected to come into contact with a person not monitored pursuant to the contract," and that after applying the factors in *Westerhold*, GSSC would be liable to them.

*Westerhold*, however, is not applicable in this breach of contract action. In *Westerhold*, the petition was based on negligence, and the issue was whether, in the absence of privity of contract, the facts as "stated in the petition imposed upon defendant a legal duty to the surety to exercise ordinary care in executing ... the construction contract...." *Westerhold*, 419 S.W.2d at 76. Therefore, the question there was whether a duty in tort could be found following negligent performance of a contractual obligation. Breach of contract, which would have resulted in liability to a third-party beneficiary, was not an issue in *Westerhold*.

■ A third-party beneficiary is one who is not privy to a contract or its consideration, but who may nonetheless maintain a cause of action for breach of the contract. Only those third parties for whose primary benefit the parties contracted may maintain an action. *Andes v. Albano*, 853 S.W.2d 936, 942 (Mo.banc 1993).

■ The general rule is that recovery by a third party is not permitted if the party is only incidentally, indirectly or collaterally benefited by the contract. *Dave*

*Kolb Grading, Inc. v. Lieberman Corp.*, 837 S.W.2d 924, 940 (Mo.App.1992). The contracting parties must have intended to benefit the third party before the third party may maintain a cause of action for breach of contract against the parties. *See id.* Parties who derive some incidental benefit from the performance of the contract have no right to enforce the contract. Moreover, the contract terms must clearly express that the contracting parties intended the third party to be the beneficiary of performance of the contract. *Roskowske v. Iron Mountain Forge Corp.*, 897 S.W.2d 67, 72 (Mo.App.1995).

■ In this case, there is no evidence that the parties intended by their contract to benefit the Appellants or Gary Trout. Appellants and the population living in proximity to persons monitored by GSSC may be benefited by the monitoring, but that benefit is incidental and does not confer the right to sue based upon the breach of that contract. Point III is denied.

The summary judgment is affirmed.

GARRISON, C.J., and MONTGOMERY, P.J., concur.