**Connie Lynn RIVERS a/k/a Connie W. Rivers, Respondent,**

v.

**Larry Woodrow RIVERS, Sr., Appellant.**

**No. WD 57523.**

Missouri Court of Appeals, Western District.

June 27, 2000.

Michael Chester McIntosh, Independence, for appellant.

Steven Douglas Wolcott, Liberty, for respondent.

Before LOWENSTEIN, P.J., ULRICH, J. and HOLLIGER, J.

ROBERT G. ULRICH, Judge.

Larry Rivers, Sr., appeals the judgment of the trial court dissolving his marriage to Connie Rivers. He claims that the trial court erred in (1) failing to apply Louisiana law and recognize the parties' premarital agreement, (2) dividing marital property without offset of a 401(k) loan or consideration of the premarital agreement, (3) disproportionately dividing the marital property and ordering him to repay marital funds expended for an extra-marital affair, (4) imputing gross income of $125,000 to him for child support and maintenance purposes, and (5) including college expenses as part of child support. The judgment of the trial court is affirmed in part, reversed and remanded in part.

## Facts

Larry Rivers, Sr. (Husband) and Connie Rivers (Wife) were married in Louisiana on May 21, 1977. The day prior to their marriage, the parties signed a premarital agreement in Louisiana that provided, in pertinent part:

1.

Larry and Connie shall be separate in property, and accordingly, they hereby formally renounce those provisions of the La. Civil Code and the laws of the State of Louisiana which establish a community of acquets and gains between husband and wife and agree that the partnership or community of acquets and gains shall not exist between them.

2.

All property and effects of Larry and Connie owned by him or her at the time of the celebration of the intended marriage, or acquired during the marriage are declared to be separate property, and that of Connie to be her separate and paraphernal property, and they and each of them do hereby expressly reserve unto themselves individually the entire administration of their respective movable and immovable property and the respective free enjoyment of each of their revenues.

3.

All income produced by either Larry or Connie after the celebration of the marriage shall be and is hereby declared to be separate property and that of Connie to be her separate and paraphernal property and they and each of them do hereby expressly reserve unto themselves individually the entire administration of their respective particular incomes and/or revenues.

After 21 years of marriage, Wife filed a petition for the dissolution of marriage in the Circuit Court of Clay County on January 15, 1999. Husband, who had practiced law in Louisiana for several years prior to moving to Missouri, acted as his own attorney during the dissolution proceedings.

The trial court entered Judgment of Dissolution of Marriage on June 15, 1999, and found "the Premarital Agreement entered

into by the parties in Louisiana is not valid as a binding contract between the parties, based upon Missouri law, in that neither party disclosed their assets or debts existing at the time of the making of the agreement." The trial court's judgment ordered that: (1) the parties share joint custody of the parties' two children; (2) Husband pay $1,820 per month in child support, calculated on imputing gross income of $125,000 to Husband and including college tuition in extraordinary child rearing costs; (3) Husband receive furniture and bank accounts of approximately $4,000; (4) Wife receive furniture and bank accounts of $31,000; and (5) the parties divide equally the net proceeds from the sale of the marital residence and divide equally Husband's pension and 401(k) plan. The judgment also ordered Husband to continue payment of the marital residence mortgage until the residence is sold. Husband was also ordered to pay Wife $5,000 as a portion of the marital assets expended by Husband while engaged in an extramarital affair. Husband's appeal followed.

### Standard of Review

■ In a court-tried case, the decree of the trial court must be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The reviewing court defers to the trial court's determination of credibility and views the evidence and inferences therefrom in the light most favorable to the decree disregarding all contrary evidence and inferences. *Jordan v. Jordan*, 984 S.W.2d 878, 880 (Mo.App. W.D.1999).

### I. Premarital Agreement

In his first point of error, Husband contends that the trial court erred in finding the parties' Louisiana premarital agreement was not valid as a binding contract under Missouri law because, under con-

flicts of law rules, Louisiana law applied to recognition and enforcement of the premarital agreement in that the agreement was negotiated, signed, and executed in Louisiana, the parties were married in Louisiana and resided in that state for the first twelve years of the marriage.

■ Section 452.330.2, RSMo Cum. Supp.1998,[1] defines marital property in the context of the disposition of property in a Missouri dissolution proceeding. Subsection 452.330.2(4) provides that marital property includes all property acquired by either spouse subsequent to the marriage except "[p]roperty excluded by valid written agreement of the parties." The term "valid written agreement" in section 452.330.2(4) includes agreements valid under a sister state's law, as recognized by the Eastern District in *Dardick v. Dardick*, 948 S.W.2d 268 (Mo.App. E.D.1997) and *In re Estate of Arbeitman*, 886 S.W.2d 644 (Mo.App. E.D.1994)(recognizing antenuptial agreements executed in other jurisdictions). However, in those cases, the respective antenuptial agreements contained express choice of law provisions.

■ In this case, the parties to the premarital contract did not make an express choice as to which state's law governs interpretation of the contract if dissolution of the marriage were to occur in a state other than Louisiana. In the absence of an effective choice of law, Missouri uses the criteria found in section 188, The Restatement (Second) of Conflicts of Law (1971), in determining whether Missouri law, or that of a sister state should apply. When determining the state laws to be applied, the contractual contacts to be considered are: a) the place of contracting; b) the place of negotiation of the contract; c) the place of performance; d) the location of the subject matter of the contract; and e) the domicile, residence, nationality, place of incorporation and place of business of the parties. RESTATEMENT (SECOND) OF CONFLICTS OF LAW § 188 (1971). These con-

---

1. All statutory references are to RSMo Cum. Supp.1998, unless otherwise indicated.

tacts are to be evaluated according to their relative importance with respect to the particular issue. *Id.*

Under the Restatement (Second) Conflicts of Law criteria, Missouri law would apply to the interpretation of the parties' premarital agreement because Missouri is where performance of the contract is to take place and the parties were residents of Missouri when the dissolution action was filed. Although the parties negotiated and executed the agreement in Louisiana and were married there, the agreement essentially addresses property division of the parties in the event of dissolution of their marriage. Therefore, the place of performance of the contract would be in Missouri, the place where the parties are dissolving their marriage and dividing their property. Because Missouri's contacts with the parties' premarital agreement outweigh Louisiana's contacts, the law of Missouri would be applied in determining whether the premarital agreement is valid and enforceable.

In Missouri, to be valid and enforceable an antenuptial agreement must (1) be entered into freely, fairly, knowingly, understandingly, and in good faith with full disclosure, and (2) must not be unconscionable. *Miles v. Werle*, 977 S.W.2d 297, 301 (Mo.App. W.D.1998). The trial court expressly found that the premarital agreement executed in Louisiana "was made without a full and complete disclosure by each party and a full and complete understanding by each party as to the nature and extent of the other's assets and debts." The trial court, therefore, did not err in finding the premarital agreement negotiated, signed, and executed in Louisiana as not valid under Missouri law.[2] Point denied.

## II.  Property Division – Marital Debts

Husband also contends that the trial court erred in dividing the marital debts

because it failed to divide all debts in that Wife was awarded an equal interest in Husband's pension and 401(k) plan without first offsetting a 401(k) loan of $36,200 and by ordering Husband to pay the mortgage on the parties' residence without offsetting his payments against the net equity to be divided upon sale.

Section 452.330.1 governs the disposition of property in a proceeding for dissolution of marriage. It requires that the trial court:

> divide the marital property and *marital debts* in such proportions as the court deems just after considering all relevant factors including: (1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children; (2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as a homemaker; (3) The value of the nonmarital property set apart to each spouse; (4) The conduct of the parties during the marriage; and (5) Custodial arrangements for minor children.

§ 452.330.1 (emphasis added).

In dividing marital debt, the trial court is vested with broad discretion in determining how and in what manner the debts should be divided, and this court will not disturb its division absent a clear showing of an abuse of discretion. *Wright v. Wright*, 1 S.W.3d 52, 60 (Mo.App.W.D. 1999) (citations omitted). An abuse of discretion occurs when a trial court's ruling is "clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration. There is no abuse of discretion if reasonable person could differ about the propri-

---

**2.** Whether the antenuptial agreement would violate Louisiana law or Missouri public policy because complete disclosure of the parties' assets was not made before the agreement was signed or for some other reason if Louisiana law were applied need not be addressed.

ety of the trial court's decision." *Id.* The trial court possesses the authority to distribute marital debts in the sense that one spouse may be assigned the primary duty to pay off the debt and hold the other spouse harmless on the same. *Id.* The fact that one spouse did not control or actively participate in the decision to incur a debt does not preclude its allocation to that spouse where it is determined to be a marital debt. *Id.*

The record supports the conclusion that the trial court did not abuse its discretion in ordering Husband to continue to pay the mortgage on the parties' residence until the property sold without offsetting his payments against the net equity. However, the record is unclear regarding the allocation of the 401(k) debt and whether it existed when the court divided the marital property. Because section 452.330.1 compels the trial court to "divide the marital property and marital debts ... as the courts deems just," whether the 401(k) debt existed when the marital property was divided is significant. The case is reversed and the cause is remanded back to the trial court for a determination whether a 401(k) loan was outstanding against Husband's 401(k) plan at the time the property division was to become effective. If the trial court finds that a 401(k) loan existed at that time, the trial court must determine whether the loan was a marital debt to be divided according to section 452.330.1. The point is granted.

## III.  Property Division – Disproportionate Division of Marital Property

■ Husband also contends that the trial court erred in disproportionately dividing the marital property and ordering him to pay Wife $5,000 for marital funds expended by Husband while engaged in an extra-marital affair. Husband claims that the trial court's division of property was disproportionate in that the court awarded Wife furniture and bank accounts valued at $31,000 while Husband was awarded furniture and bank accounts valued at $4,000. He also claims that he should only

be ordered to repay one-half, or $2,500, of the marital funds he expended on his extra-marital affair.

■ The trial court is vested with great flexibility and discretion in its division of property pursuant to section 452.330. *Wright,* 1 S.W.3d at 59. The law does not require an equal division of marital property, but the division must be fair and equitable after taking into consideration the factors enumerated in section 452.330.1. *Id.; Ray v. Ray,* 877 S.W.2d 648, 651 (Mo.App. W.D.1994). A reviewing court must defer to the trial court's marital property division unless it is improper under the principles of *Murphy v. Carron,* 536 S.W.2d at 32, or is an abuse of discretion. *Ray,* 877 S.W.2d at 651. The division of property is presumed to be correct, and the party challenging the division bears the burden of overcoming the presumption. *Id.* The fact that the trial court awarded one party a considerably higher percentage of the marital property than it awarded the other is not *per se* an abuse of discretion. *Id.*

In the dissolution decree, the trial court awarded the parties equal interests in the net proceeds from the sale of the marital residence and Husband's pension and 401(k) plan. The trial court also awarded Wife furniture and bank accounts valued at approximately $31,000 and Husband furniture and bank accounts valued at approximately $4,000 and ordered Husband to pay Wife "the sum of $5,000.00 representing all or a portion of the marital assets used by the Respondent to provide gifts and other expenses for [Husband's extra-marital affair]." Husband argues this property division is not fair and equitable given the circumstances of the case.

Sufficient evidence supports the trial court's division of marital property in this case. Husband has the potential and ability to earn significantly higher income than does Wife. During much of the twenty-one years of marriage, Wife was not employed outside the home due to the caring of the parties' two children. The trial court found that neither spouse owned any non-

marital property at the time of the dissolution of the marriage. Furthermore, the trial court designated Wife as primary residential custodian of the parties' children. As to the parties' conduct, Husband admitted purchasing jewelry, airfare, and other items for an extra-marital affair. Based on these considerations, the trial court did not abuse its discretion in the division of marital property. Point denied.

## IV. Child Support – Imputation of Income

Husband contends that the trial court erred in calculating child support based upon imputing $125,000 per year income to Husband in that recent employment alone is not sufficient to determine potential income. He claims additional considerations include his work history, circumstances of job loss, occupational qualifications and job opportunities in the community and that all considerations support an income level of $72,000 per year.

In calculating child support, trial courts have discretion to impute income to an underemployed or unemployed parent. *Jordan*, 984 S.W.2d at 881. The Directions, Comments for Use for Completion of Form No. 14 provide:

> When determining whether to include imputed income, and if so, the amount to include in a parent's "gross income," a court or administrative agency shall consider all relevant factors, including: (1) the parent's probable earnings based on the parent's work history during the three years, or such time period as may be appropriate, immediately before the beginning of the proceeding and during any other relevant time periods; (2) the parent's occupational qualifications; (3) the parent's employment potential; (4) the available job opportunities in the community; and (5) whether the parent is custodian of a child whose condition or circumstances make it appropriate that the parent not be required to seek employment outside the home.

The court may impute a higher income to the non-custodial parent if the evidence indicates that parent has the capacity to earn more. *Luker v. Luker,* 861 S.W.2d 195, 199 (Mo.App. W.D.1993).

In this case, the trial court imputed gross income of $125,000 to Husband based upon the following findings:

> Respondent is presently self-employed as a consultant, having been previously employed by the Veterans of Foreign Wars ("VFW") for the past few years. The Court further finds that the Respondent has a law decree and is a licensed, non-practicing attorney in the State of Louisiana, but is currently obtaining the necessary Continuing Legal Education credits to be able to practice law in the State of Louisiana. The Court further finds that, based upon the Respondent's qualifications and experience and previous income history, and including the balance of the lump sum payment received from the VFW last September as part of a severance package upon termination of his employment with VFW, that the Respondent has the ability to earn the sum of $125,000 during 1999.

The record supports the trial court's findings and its conclusion that Husband was underemployed and had a higher earnings potential. The trial court did not err in imputing to Husband gross income of $125,000 for purposes of determining child support. Point denied.

## V. Child Support – College Expenses

Husband's final point on appeal claims that "the trial court erred in calculating child support of $1820.00 per month because it included in Form 14 child support extraordinary child rearing costs representing college tuition for [the parties' elder child] in that no evidence supported she completed at least 12 hours of credit each semester and achieved grades sufficient to re-enroll."

Husband's point on appeal states that he is challenging the inclusion of college tuition costs on the trial court's Form 14 calculation of child support. His reference to section 452.340.5, however, actually

challenges the trial court's award of child support for the nineteen-year-old child and not the Form 14 calculation. Better stated, the trial court erred in awarding child support for the nineteen year old child because Husband's child support obligation may have abated for failure to meet the provisions of section 452.340.5, in that no evidence was presented that she completed at least 12 hours of credit each semester and achieved grades sufficient to re-enroll.

At the time of the petition for dissolution of marriage, the parties' children were ages nineteen and sixteen. Evidence was presented that, prior to the dissolution, the parties' elder daughter had attended college for a year and that Husband had paid for her college expenses for that year. Testimony was also presented regarding in-state versus out-of-state tuition charges. No other evidence was presented.

Section 452.340.3(5) provides that the obligation of a parent to make child support payments terminates when the child reaches age eighteen, unless certain exceptions apply. The exception, which may be applicable here, provides:

> If when a child reaches age eighteen, the child is enrolled in and attending a secondary school program of instruction, the parental support obligation shall continue, if the child continues to attend and progresses toward completion of said program, until the child completes such program or reaches age twenty-one, whichever first occurs. If the child is enrolled in an institution of vocational or higher education not later than October first following graduation ... and so long as the child enrolls for and completes at least twelve hours of credit each semester, ... and achieves grades sufficient to reenroll at such institution, the parental support obligation shall continue until the child completes his or her education, or until the child reaches the age of twenty-two, whichever first occurs.

§ 452.340.5, RSMo Cum.Supp.1998.

In this case, the record fails to indicate whether the provisions of section 452.340.5 were satisfied. From the record, no determination can even be made regarding whether the parties' elder child had enrolled in "an institution of vocational or higher education" before October first following graduation from high school, much less whether the child continues to be enrolled for twelve hours of credit, and whether she is advancing satisfactorily as contemplated by the statute. The cause is remanded to the trial court for a determination of whether the provisions of section 452.340.5 were met in awarding child support.

The judgment is reversed and the cause remanded to the trial court with directions to (a) determine whether a 401(k) loan existed at the time the property division was to become effective, and, if a 401(k) loan is found to exist, then to determine whether the loan was a marital debt to be divided according to section 452.330.1, and (b) to determine whether the provisions of section 452.340.5 were met in awarding child support.

LOWENSTEIN, P.J., and HOLLIGER, J. concur.