**Tracy KESTER, now Myers, Appellant/Respondent,**

v.

**David Lynn KESTER, Respondent/Cross– Appellant,**

and

**Kester Sales, Inc., Respondent/Cross– Appellant.**

Nos. 24992, 24993.

Missouri Court of Appeals, Southern District, Division One.

June 30, 2003.

---

Mark C. Fels & Gregory J. Smith, Smith & Fels, P.C., Springfield, for Appellant.

F. William Joyner, Lowther Johnson, LLC, Springfield, for Respondent.

Before MONTGOMERY, P.J., GARRISON and BARNEY, JJ.

PER CURIAM.

Appellant, Tracy Kester, now Meyers ("Wife"), appeals from an amended judgment and decree of dissolution of marriage entered by the trial court. She raises one point of trial court error premised on the trial court's erroneous failure to classify as marital property the reduction on a mortgage debt paid from rental income. Respondent/Cross–Appellant, David Lynn Kester ("Husband"), raises three points of trial court error in his cross-appeal premised on the trial court's erroneous classification of certain rental incomes and tax refunds as marital property; erroneous classification of his sole property as marital property; and improper division of marital property.

During litigation, the trial court consolidated an action brought by Respondent/Cross–Appellant, Kester Sales, Inc. ("Kester Sales"), against Wife with the dissolution of marriage action and entered summary judgment against Wife in favor of Kester Sales in the amount of $24,406.37.

In its sole point on appeal, Kester Sales maintains the trial court erred in failing to award it attorney fees against Wife because it was intended by the parties' antenuptial agreement that Kester Sales was a third-party beneficiary of the agreement and was entitled to enforce the agreement's attorney fee provisions against Wife.

Husband and Wife married on May 6, 1995, in Taney County, Missouri. The parties entered into an antenuptial agreement in which they agreed that certain individual assets held prior to their contemplated marriage would remain separate property. The agreement also directed how new property obtained during the marriage would be classified as marital or separate property. Neither party contests the validity of the antenuptial agreement.

Prior to and throughout the marriage, Husband was the sole shareholder of Kester Sales, a furniture company located in Springfield, Missouri, which does business as "The Furniture Broker." Husband also separately owned the commercial property upon which the business is located ("Sunshine property"). During the marriage, Husband began renting the Sunshine property to Kester Sales for $15,000 per month, which sum he deposited into the parties' joint checking account. Husband then made the monthly mortgage payment on the Sunshine property. At the time of the marriage, the Sunshine property was encumbered by a $642,000 mortgage. This amount had been reduced to $428,223.01 at the time of the dissolution.

The parties also maintained a joint checking account throughout their marriage. In October 1997, the parties transferred their account from another bank to Metropolitan National Bank, where they opened a joint checking account and a money market account. The parties used this joint checking account for most of their financial transactions. At this same time, Husband restructured the mortgage on the Sunshine property to reduce the monthly mortgage payments from $7,500 to $5,950.

On October 17, 1999, the parties separated. Husband continued to receive $15,000 per month in rent from Kester Sales and continued to make the monthly mortgage payment of $5,950 on the Sunshine property. Husband also continued to make payments on the parties' marital residence, an unsecured note, boat-related expenses, income taxes, and other expenses.

After a hearing by a court-appointed Special Master followed by a trial, the trial court ruled, in pertinent part, that the $213,776.99 reduction of the mortgage debt on the Sunshine property was not marital property and, therefore, was not an asset subject to division. However, the trial court classified as marital property the "net rental income" received from Kester Sales during the parties' separation and certain income tax refunds received by Husband during that time period. The trial court then awarded Wife one-half of the amount respectively received from each such source, i.e. $117,650 and $18,516. The court also classified a Colorado condominium and two boats as marital property.

■■■ "In a court-tried case, the decree of the trial court must be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Rivers v. Rivers* 21 S.W.3d 117, 121 (Mo.App.2000). The trial court has broad discretion in identifying and valuing marital property. *Farley v. Farley* 51 S.W.3d 159, 164 (Mo.App.2001); *Beckham v. Beckham* 41 S.W.3d 908, 911 (Mo.App.2001). The trial court also is given broad discretion in dividing property and we will interfere with its decision only if the division is so unduly weighted in favor of one party that it amounts to an abuse of discretion. *Kirkwood v. Kirkwood,* 77 S.W.3d 675, 680 (Mo.App.2002); *King v. King* 66 S.W.3d 28, 32–33 (Mo.App.2001). The resulting division of marital property need not be equal, although it must be equitable after taking into account the factors enumerated in section 452.330.1 and any other relevant factors.[1] *Kirkwood* 77 S.W.3d at 680. The trial court abuses its discretion only when its ruling is "clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense

of justice and indicate a lack of careful consideration." *In re Marriage of Holden* 81 S.W.3d 217, 225 (Mo.App.2002).

■■■ Furthermore, we review the evidence and inferences in the light most favorable to the trial court's decision and disregard all contrary evidence and inferences. *Kirkwood* 77 S.W.3d at 680; *Love v. Love* 72 S.W.3d 167, 171 (Mo.App.2002). "Judging credibility and assigning weight to evidence and testimony are matters 'for the trial court, which is free to believe none, part, or all of the testimony of any witnesses.'" *Love* 72 S.W.3d at 171 (quoting *In re Marriage of Haugh* 978 S.W.2d 80, 82 (Mo.App.1998)). We presume that the trial court took into account all evidence and believed such testimony and evidence that is consistent with its judgment. *Kirkwood* 77 S.W.3d at 680. The party challenging the trial court's judgment in a dissolution of marriage has the burden of demonstrating error. *Id.; King* 66 S.W.3d at 33.

■■■ "In Missouri, to be valid and enforceable an antenuptial agreement must ... be entered into freely, fairly, knowingly, understandingly, and in good faith with full disclosure...." *Rivers* 21 S.W.3d at 122. "Prenuptial agreements will be upheld and will dispose of issues of property division unless found to be unconscionable." *Sprock v. Sprock* 882 S.W.2d 183, 186 (Mo.App.1994).

We first consider Wife's claim that the trial court erred when it classified as a non-marital asset the total pay-down amount of $213,776.99, which represented the amount the mortgage debt on the Sunshine property was reduced during the marriage.

Preliminarily, we observe there is a statutory presumption that all property

1. Unless otherwise indicated, all statutory references are to RSMo 2000.

acquired by either spouse during the marriage and before a legal decree of separation or dissolution is marital property, regardless of how that property is titled. § 452.330.3.[2] The presumption of marital property may be overcome and property will remain separate, however, by a showing that the property was obtained under one of the following exceptions set forth in section 452.330.2:

(1) Property acquired by gift, bequest, devise, or descent;

(2) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent;

(3) Property acquired by a spouse after a decree of legal separation;

(4) Property excluded by valid written agreement of the parties; and

(5) The increase in value of property acquired prior to the marriage or pursuant to subdivisions (1) to (4) of this subsection, unless marital assets including labor, have contributed to such increases and then only to the extent of such contributions.

Wife contends that section 452.330.2(4) does not apply because Husband deposited the $15,000 monthly rent payments into the parties' joint checking account. Wife claims this act co-mingled those payments with marital funds and when Husband made the monthly mortgage payment with funds drawn from that account, he did so with marital property. Wife argues that paragraph 8 of the parties' agreement allows for such co-mingling when it sets out that "[i]ncome derived from the parties' separate property shall be marital property only if said income is deposited to joint

accounts of the parties or converted into or used to acquire jointly held property . . . ." Therefore, Wife argues the amount constituting the reduction of the mortgage debt resulting from those payments should be classified as marital property.

■ In a divorce proceeding on appeal, this Court must view the evidence in the light most favorable to the trial court's decision. *King* 66 S.W.3d at 33.

The record shows the Sunshine property was acquired prior to the marriage and remained in Husband's name alone thereafter. The antenuptial agreement designated the property as a separate asset belonging to Husband.

■ While Wife correctly sets out that paragraph 8 of the parties' agreement provides that "Income derived from the parties' separate property shall be marital property only if said income is deposited to joint accounts of the parties," she fails to acknowledge the remaining portions of paragraph 8 defining what type of income can be considered marital property. Paragraph 8 also specifically provides that "[n]otwithstanding the foregoing, the parties agree that all . . . net rental income," which the agreement defines as "gross rental income less any *debt service payments or other obligations* of either of the parties as lessor under any lease agreement" (emphasis added), is to be considered marital property. In this instance the more limited and specific clause acts to modify the more general clause. *Tri-County Retreading, Inc. v. Bandag, Inc.* 851 S.W.2d 780, 784 (Mo.App.1993). Accordingly, the debt service payment Husband made to pay down the mortgage is

**2.** Section 452.330.3 states:

All property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation or dissolution of marriage is presumed to be marital property regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, and community property.

excluded from the definition of marital property.

As previously set out, Husband used a portion of the $15,000 monthly rental payment received from Kester Sales to make the monthly mortgage payment on that property. At trial, Husband testified that the $9,050 difference between the $15,000 in rent received from Kester Sales and the $5,950 paid each month for the mortgage on the Sunshine property was net rental income.

Wife's testimony indicates that she understood that the antenuptial agreement specifically distinguished funds applied to debt service payments under a lease agreement and that, under the agreement, these funds were not to be considered as marital property. When questioned by Husband's trial counsel, Wife acknowledged that the marital estate only included the amount beyond the mortgage payments Husband paid for the Sunshine property:

> A: All right. My understanding of that document is that [Husband] is obligated as lessee to pay any obligation by that lease *and that anything after that is marital.* So his obligation in his lease with Kester Sales is what I understand would be his liability. I am not qualified to go into it any further than that.
>
> Q: You understand that [Husband] had a mortgage on the property; is that correct?
>
> A: Yes.
>
> Q: All right. And [Husband] was obligated to pay the mortgage to the bank—
>
> A: Yes.
>
> Q: —correct? And so you're saying the difference—the amount of the rent less that mortgage payment is marital property?

> A: Less his obligation as lessor is as far as I would feel comfortable asserting.
>
> Q: You understand the agreement specifically refers to his debt obligations?
>
> A: As a lessor, yes. That is my understanding that's what it says.

(emphasis added). The record also reveals Wife understood the term "net rental income" as used in the agreement:

> Q. And how much does the corporation pay each month on rent?
>
> A. $15,000.
>
> Q. So anything different between the mortgage payment and the amount of the rental payment by Kester Sales is what, in your opinion?
>
> A. That would be net rental income.
>
> Q. All right. And that's provided for, I believe in Paragraph 8?
>
> A. That's my understanding.
>
> Q. Of the prenuptial agreement?
>
> A. Yes.

Such evidence sufficiently indicates that the parties intended that the Sunshine property and the assets used to pay down the mortgage on that property were to remain separate assets of Husband. Because neither party challenges the validity of the antenuptial agreement, we are bound to enforce the agreement according to that intent. *See, e.g., King,* 66 S.W.3d at 35.

Furthermore, while Wife presented evidence regarding the total pay-down amount on the Sunshine property she failed to show that funds from the joint checking account were used to make payments on the property. Husband acknowledged making payments on the mortgage every month but testified that he was uncertain as to whether all of the payments on the Sunshine property originated from the joint checking account.

Q: And all of the payments and that paydown came out of a joint checking account of yours and [Wife's]?

\* \* \*

A: I don't know that for sure.

Q: Okay. You don't know either way?

A: No. I don't know that they all came out of a joint checking account.

■ A trial court may judge credibility and assign weight to evidence and testimony, and is free to believe none, part, or all of a witness's testimony. *Love* 72 S.W.3d at 171. From Husband's uncertainty of where the funds originated, the trial court could also conclude that no marital assets were applied as payments toward the Sunshine property.

We determine the trial court did not abuse its discretion when it determined that the amount by which the mortgage debt on the Sunshine property was reduced remained a separate asset of Husband. Wife's point is denied.

In the first point of his cross-appeal against Wife, Husband contends that the trial court erred when it classified $235,300 in post-separation net rental income and $37,032 in post-separation tax refunds as marital property. Husband argues that the antenuptial agreement does not provide for the division of these assets, that there was no evidence that such assets existed at the time of the trial, and that there was no evidence he secreted or squandered either asset.

Reiterating, the record reveals that during the 26 months the parties remained separated, Husband received $15,000 per month in rent from Kester Sales and paid $5,950 paid toward the debt payment on the Sunshine property, which resulted in $9,050 per month of "net rental income"

subject to division as marital property.[3] The trial court concluded this net rental income is "defined by the Agreement as marital property and is to be divided equally between the parties." Because Wife had not received any share of this income during the separation, the court found her entitled to one-half of the net rental income from that date, or $117,650.

Husband argues the antenuptial agreement does not specify that net rental income must be divided among the parties. He argues that property owned as joint tenants with right of survivorship, property owned as tenants by the entirety, or tangible personal property acquired during the marriage is to be divided equally between the parties. We find no merit to this portion of Husband's point.

■ As discussed above, a trial court has broad discretion in identifying marital property. *Beckham* 41 S.W.3d at 911. We presume that, subject to certain exceptions, all property acquired by either spouse during the marriage is marital property. § 452.330.3. While section 452.330.2(4) allows a party to rebut this presumption via a written agreement of the parties, the agreement between the parties in this case fails to do so and, in fact, specifically provides that the parties would divide any net rental income received. As previously, partially set out, the pertinent part of that agreement states at paragraph 8:

Notwithstanding the foregoing, the parties agree that all net income in any form derived after the date of marriage from any business operated by either or both of the parties, including Kester Sales ... shall be considered to be marital property, including salaries, bonuses,

---

**3.** The trial court apparently arrived at $235,300 by multiplying the $9,050 in monthly net rental income by the number of whole months from the date of separation, November 1999, through the date of the trial, December 2001.

dividends, and net rental income (gross rental income less any debt service payments or other obligations of either of the parties as lessor under any lease agreement).

Similarly, the record shows that while the parties were separated Husband received $37,032.00 in refunds on his 1999 and 2000 tax returns. In our review of the antenuptial agreement, we find no reference to the classification of tax refunds as either marital or separate property. Proceeds from federal and state tax refunds are presumed to be marital property and subject to division by the trial court. *Fornachon v. Fornachon* 748 S.W.2d 705, 708 (Mo.App.1988). Because the antenuptial agreement does not rebut this presumption, the tax refunds received during the marriage are considered marital property.

Because the trial court properly classified the net rental income and income tax refunds as marital property, it lies within the trial court's broad discretion to determine how to divide those assets. *Kirkwood* 77 S.W.3d at 680; *King* 66 S.W.3d at 32–33. The record reflects that the trial court divided this marital property equally and without undue weight in favor of either party. Point is denied in part.

However, Husband next contends there was no evidence that any such funds existed at the time of the trial, or that the funds were secreted or squandered. Rather, he maintains that these assets were "completely consumed by the parties' joint obligations, taxes, and [Husband's] living expenses." As a result, Husband asserts no such assets remained for the trial court to divide.

▮ A trial court in a dissolution proceeding must have evidence of the value of the marital property subject to division before it can order a just division of that property. " 'Only by having evidence from which a fair and accurate valuation of the marital property can be made can a just division of the property be achieved.' " *Shipp v. Shipp* 59 S.W.3d 647, 649 (Mo. App.2001) (quoting *Frame v. Frame* 696 S.W.2d 332, 336 (Mo.App.1985)). Any valuation of marital property is prohibited unless supported by the evidence at trial. *Morse v. Morse* 80 S.W.3d 898, 905 (Mo. App.2002). As a general rule, the appropriate date used by the trial court when valuing marital property in a dissolution proceeding is the date of the trial. *Conrad v. Conrad* 76 S.W.3d 305, 314 (Mo.App. 2002); *Wright v. Wright* 1 S.W.3d 52, 62 (Mo.App.1999). "[U]nder this rule, if a marital asset does not exist at the time of trial, the trial court cannot value and include that asset in its division of marital property." *Conrad* 76 S.W.3d at 314; *see also Kirkwood* 77 S.W.3d at 681. The logic behind this approach is straightforward because a trial court considering property in a dissolution proceeding "cannot consider an asset for distribution as marital property, unless and until there is evidence that there is a marital asset subject to distribution." *Conrad* 76 S.W.3d at 315.

▮ An exception to this rule exists that provides that a trial court may hold a party liable for the value of marital assets that no longer exists when that spouse is found to have secreted or squandered marital assets in anticipation of divorce. *Id.* at 314. However, marital property used by a spouse for his or her living expenses after separation and prior to the dissolution is a legitimate expenditure of marital assets. *Kirkwood* 77 S.W.3d at 681; *Conrad* 76 S.W.3d at 315; *Wright* 1 S.W.3d at 62.

The trial court found that during the time the parties were separated the marital estate received $235,300 in net rental income and $37,032 in tax refunds. The trial court acknowledged that it "did not

have sufficient evidence presented to it at trial to make any findings that certain post-separation expenses incurred by the parties were extraordinary or in fraud of the other party's marital rights," and Wife has not alleged any such conduct.

However, Husband correctly asserts there is nothing in the record to indicate that the net rental income and tax refunds received while the parties were separated existed at the time of the dissolution proceeding. The evidence presented at trial also suggests that at least a portion of that income was expended toward the parties' living expenses and marital debts. Absent evidence that this income existed at the time of trial, the trial court could not value or include that asset in its division of marital property.

■■■ As the court in *Conrad* recognized, the better course is to remand the issue for the trial court to fully develop the record and then rule on whether all or any part of the marital assets in question existed at the time of the dissolution proceeding or whether such assets were legitimately expended on living expenses and marital debts. *Conrad* 76 S.W.3d at 317. Point well taken in part.

In the second point of his cross-appeal against Wife, Husband argues, in the alternative, that in the event this reviewing Court determines that post-separation income was subject to classification and division of marital property, the trial court nevertheless erred when it divided the net rental income and tax refunds equally between the parties.

Husband argues the antenuptial agreement did not require an equal division of the net income and tax refunds, and he maintains the judgment did not account for Husband's living expenses and payment toward the parties' marital debts. Husband also claims that the trial court failed to award him a share of Wife's post-separation income, failed to consider tax consequences on the net rental income received before awarding an equal share of that asset to Wife, and incorrectly awarded Wife a share of both the income and the income tax refund paid on that income.

■■■ We note that in paragraph 11 of its judgment, the trial court recognized that net rental income from Kester Sales was defined in the agreement as marital property. In paragraph 15 of its judgment, the trial court stated the agreement did not require that marital income be divided equally. The trial court is correct in this analysis. However, absent an agreement to the contrary, pursuant to section 452.330.1, the trial court in a dissolution proceeding is to divide marital property and debts in such proportions the court deems just after considering all relevant factors therein set out.[4] *See Rivers* 21 S.W.3d at 122–23. The factors listed in section 452.330.1 are not exclusive, and the trial court has "great flexibility and far-reaching power in dividing the marital property." *Farley* 51 S.W.3d at 165.

---

**4.** Section 452.330.1 requires marital property and marital debts to be divided in proportions the trial court deems just after considering all relevant factors, including:

(1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(3) The value of the non-marital property set apart to each spouse;

(4) The conduct of the parties during the marriage; and

(5) Custodial arrangements for minor children.

There is no formula respecting the weight to be given by the trial court to the relevant factors set out in section 452.330.1, and while the statute requires a fair and equitable division of marital property given the individual circumstances of the case, it does not require an equal division of marital property. *Id.; see also Holden* 81 S.W.3d at 225. That one party receives a higher percentage of marital assets does not *per se* constitute an abuse of the trial court's discretion. *Farley* 51 S.W.3d at 165.

■ On appeal, we presume the correctness of the trial court's division of marital property, and interfere with its judgment only if the division is so heavily and unduly weighted in favor of one party as to amount to an abuse of discretion. *Id.; King* 66 S.W.3d at 32–33.

We have discussed at length the trial court's decision to award Wife a portion of the net rental income and tax refunds and have found no error in its decision. However, the trial court must determine on remand whether such assets still exist or if they were otherwise expended for living expenses and payment of marital debts and taxes. After such determination is made, the trial court can determine how to "fairly and equitably" divide between the parties these contested assets. Husband's point in the alternative is denied.

In the third point of his cross-appeal against Wife, Husband contends that the trial court erred when it classified as marital property certain jointly-held assets including a condominium, a houseboat, and a fiberglass boat. Husband argues that he purchased these assets with separate, nonmarital property and that the antenuptial agreement ensured that each asset remained separate property.

Husband maintains the antenuptial agreement at paragraph 3(a) specifically provides that each spouse would retain a separate interest in "[a]ll real and personal property . . . owned by each of the parties at the time of the marriage." He also asserts that the agreement at paragraph 3(d) sets out that the parties retain their respective, separate property regardless of "whatever nature, tangible or intangible, into which any of the items of property described in [the agreement] are transferred or converted." Husband claims that these provisions expressed the parties' intent that their separate property, and any assets subsequently obtained using proceeds from that separate property, would remain separate property regardless of how titled.

We observe, however, that paragraph 4(d) of the antenuptial agreement provides that:

> Any assets owned by [Husband] and [Wife] as joint tenants with rights of survivorship or tenants by the entirety shall, upon termination of the marriage by divorce or dissolution of marriage, be divided equally between them.

■ We are, of course, aware that a court may not selectively enforce part and reject part of a prenuptial agreement. *Brennan v. Brennan* 955 S.W.2d 779, 785 (Mo.App.1997). While it is clear that in general terms paragraph 3 recognizes the right of each party to maintain his or her own separate property during the course of the marriage, it is our view that the provisions of paragraph 3 of the antenuptial agreement did not prevent either party from placing his or her property into the marital estate.[5] Furthermore, paragraph

---

**5.** A spouse's act of titling separate property into the joint names of both parties creates a presumption that the property transferred was a gift and was transmuted into marital property. *See Shipp* 59 S.W.3d at 649, n. 1; *Montgomery v. Montgomery* 18 S.W.3d 121,

4(d) specifically addresses the disposition of the properties *in the event of divorce or dissolution of marriage* of the parties and requires an equal division between the parties in that event.

■ The record reflects that the condominium was jointly titled in both parties' names. Under the express terms of paragraph 4(d), this asset is to be considered marital property subject to equal division by the trial court at the time of the dissolution of the parties' marriages.

The record also indicates that the houseboat and the 1998 Crownline boat were purchased with funds from the parties' joint bank account.[6] Because the boats are not titled assets,[7] paragraph 4(d) of the parties' agreement does not control. However, paragraph 8 also states, in pertinent part:

> Income derived from the parties' separate property shall be marital property only if said income is deposited to joint accounts of the parties or converted into or used to acquire jointly held property, provided, however, that all tangible personal property which is not subject to being registered or titled by written instrument shall be presumed to be marital property, to be divided equally between them.

The evidence supported a finding that the boats were marital property subject to equal division by the trial court at the time of the dissolution of the parties' marriage. Husband's Point Three is denied.

In the final point under review, Kester Sales contends the trial court erred when it failed to award it attorney fees incurred in defending against Wife's claims. It argues that Kester Sales was an intended third-party beneficiary of the antenuptial agreement and, therefore, was entitled to enforce that agreement against Wife.

■ We shall not disturb a trial court's decision to award attorney fees or the amount of any such an award absent an abuse of discretion or if the amount awarded was so arbitrarily arrived at or so unreasonable as to indicate indifference and a lack of proper consideration by the trial court. *See King* 66 S.W.3d at 39; *Vaughn v. Willard* 37 S.W.3d 413, 417 (Mo.App.2001). However, when a party requests attorney fees under a provision of a contract, the trial court must comply with the terms set forth in that contract. *Vaughn* 37 S.W.3d at 417. This requirement applies to attorney fees provisions in antenuptial agreements. *See Brennan* 955 S.W.2d at 785.

In this case, the antenuptial agreement entered into between Husband and Wife set out that if either party unsuccessfully challenged or attempted to void the contractual effect of the agreement, that party would be liable for the attorney fees and costs incurred by the other party in the

---

124 (Mo.App.2000); *Williams v. Williams* 965 S.W.2d 451, 454 (Mo.App.1998); *Stephens v. Stephens* 842 S.W.2d 909, 913 (Mo.App.1992).

**6.** The Special Master concluded that the "boats were purchased with funds which came from joint accounts...." The Special Master also found that Husband "wholly failed to establish what portion of the value [of the Crownline boat] is attributable to the trade-in" of his separate property, thus it was not possible to set aside any value as separate. Similarly, the Special Master concluded that

the "money to purchase [the houseboat] came from a joint account of the parties which had $80,101.42 in it on January 5, 1996, so that there was more than enough money in the account to pay the $70,000 purchase price of the houseboat *before* [Husband] got the fire loss proceeds or sale proceeds from his separate property."

**7.** The houseboat, while without a certificate of title, "is a Coast Guard documented vessel[ ] and is registered as joint."

defense and enforcement of the agreement. In its judgment, the trial court concluded that Wife "attempted to avoid the contractual effect of the Agreement on several occasions and has at times refused to recognize its existence and controlling effect on her pleadings."

Consistent with the terms of the antenuptial agreement, the trial court found that Husband was entitled to recover attorney fees incurred in defending the antenuptial agreement and awarded him $2,812.50. The trial court further concluded that because Kester Sales was not a party to the antenuptial agreement, it had no contractual right to recover such fees from Wife.

Kester Sales now argues that this provision should also apply to Kester Sales and claims that the company was an intended third-party beneficiary to the agreement.

"A third-party beneficiary is one who is not privy to a contract or its consideration, but who may nonetheless maintain a cause of action for breach of the contract." *Trout v. General Security Services Corp.* 8 S.W.3d 126, 132 (Mo.App. 1999); *see also L.A.C. v. Ward Parkway Shopping Center Co.* 75 S.W.3d 247, 260 (Mo. banc 2002). Only a third party for whose primary benefit the parties contracted may maintain an action to enforce a contract; a third party may not recover if that party "is only incidentally, indirectly or collaterally benefited by the contract." *Trout* 8 S.W.3d at 132. The terms of a contract must clearly and directly express the contracting parties' intent for the third party to benefit from the contract. *L.A.C.* 75 S.W.3d at 260; *Trout* 8 S.W.3d at 132.

In this case, substantial evidence exists upon which the trial court could conclude that Husband and Wife did not intend for the antenuptial agreement to benefit Kester Sales. Only Husband and Wife were parties to the agreement. The agreement grants no express rights to Kester Sales, but merely refers to the company in the "Schedule of Assets" and other sections that address Husband's assets. Kester Sales has no express right under the parties' agreement to recover attorney fees, but instead the agreement merely states that should a spouse not prevail in a challenge to the agreement, that spouse shall pay attorney fees and costs "incurred by the other party" in the action. While the company may receive some incidental or indirect benefit from the agreement, we find no clear and direct expression of the parties' intent that Kester Sales benefit from the agreement. Therefore, the trial court's decision not to award attorney fees to Kester Sales was not in error. *L.A.C.* 75 S.W.3d at 260; *Trout* 8 S.W.3d at 132. Kester Sales' point is denied.

The judgment of the trial court is affirmed in part and reversed in part and the cause remanded for further proceedings consistent with this opinion. To this end, the trial court is authorized to receive further evidence.