Cynthia R. SHEPARD, Appellant,

v.

Johnny W. SHEPARD, Respondent.

No. 23895.

Missouri Court of Appeals, Southern District, Division Two.

June 20, 2001.

of the Honorable Glenn Norton, who is no longer on the Associate Circit Court of Ralls County.

L. Thomas Elliston, Webb City, for Appellant.

Sarah Luce Reeder, Joplin, for Respondent.

BARNEY, Chief Judge.

Cynthia R. Shepard ("Wife") appeals from a Judgment Entry of Dissolution of Marriage ("judgment") which dissolved her marriage with Johnny Shepard ("Husband"), positing trial court error in failing to include the cost of private schooling in determining the amount of child support Husband was to contribute, and trial court error in unjustly dividing the marital property in favor of Husband. We affirm.

Husband and Wife married on July 28, 1984. One child was born of the marriage, Madeline Nichole Shepard ("Maddy"), born September 26, 1988. When Maddy started school, Husband and Wife enrolled her in a private school, the Thomas Jefferson Independent Day School, ("private school"), with tuition costs in excess of $6,000.00 per year at the time of the dissolution of marriage proceeding in March of 2000.

In 1993, Husband and Wife opened Oak Tree Fabric, a fabric and upholstery store, ("the fabric store") in Joplin, Missouri. Shortly thereafter, Wife began working for her parents at a furniture store they owned in Springfield, while Husband assumed duties as the primary operator of the parties' fabric store. In 1998, Wife's parents opened up a business called The Market Place Interiors across the street from the fabric store, and Wife became the manager of this business. In 1999, business at the parties' fabric store declined

20–25% and Husband testified that he attributed this decline to the loss of a major account as well as competition from the store opened by Wife's parents.

As more fully discussed below, in dividing the property, the trial court awarded Wife the marital home, much of the household goods and furniture, her IRA account, a portion of a stock market account, and other miscellaneous items. Husband was awarded the fabric store, his IRA account, other miscellaneous items, and the remaining portion of the stock market account.

■■■ This Court's review of the trial court's judgment is governed by Rule 84.13(d), and will be affirmed unless it .is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously applies the law.[1] *In re Marriage of Thompson*, 24 S.W.3d 751, 753–54 (Mo.App.2000); *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). In reviewing the appeal of a court-tried dissolution action, this Court views the evidence in a light most favorable to the judgment. *In re Marriage of Pahlow*, 39 S.W.3d 87, 90 (Mo.App.2001). The challenging party bears the burden of demonstrating error by the trial court. *Id.; Taylor v. Taylor*, 12 S.W.3d 340, 344 (Mo.App.2000).

■■■ In her first point, Wife maintains that the trial court erred in the amount of child support it ordered Husband to pay because it failed to include the cost of private schooling for Maddy.

At trial, Wife testified that Maddy had always attended a private school since the commencement of her education and that Wife wished Maddy to continue her attendance at the private school because, "[h]er friends are there. She's been there for seven years. She's a smart child. She's excelling. She's doing very well. And that's the environment that she most feels comfortable with. That's like home to her." She furthered testified that the separation and divorce had been traumatic for Maddy, that changing schools would also be a traumatic experience, and that she would do whatever she could to keep Maddy in the private school. However, in responding to questions from Husband's attorney, Wife acknowledged that there was nothing "wrong" with public schools. Husband testified that he did not wish to pay for the private school Maddy attended; that he and Wife had discussed taking Maddy out of the private school in 1998; and that during their discussion Wife did not have a problem with that course of action. He further testified that he did not feel it was in Maddy's best interest to continue at private school because "she needs to have more rounded education as far [sic] interacting with different people, and this public school system is fine."

■■■ In its final judgment, the trial court made a specific reference to the private schooling of Maddy, noting that she "does not have any special educational needs that cannot be met in a public school." Consequently, the Court did not increase the basic amount of child support for private school expenses. The trial court has discretion whether to include a portion of private school tuition in child support paid by a noncustodial parent. *Drury v. Racer*, 17 S.W.3d 608, 610 (Mo. App.2000). Deference is given to the trial court's judgment and we will reverse only if the evidence is palpably insufficient to support it. *Id.; Douglas–Hill v. Hill*, 1 S.W.3d 613, 620 (Mo.App.1999). The fact that a parent does not want to pay for private school is not, by itself, enough to deny child support for educational expenses, however, it is a relevant factor. *Drury*, 17 S.W.3d at 610. "The test for

---

1. Rule references are to Missouri Court Rules (2000), unless otherwise noted.

determining when a court should order private schooling over the wishes of one parent is when such schooling will meet the particular educational needs of the child." *Id.*

In support of her argument, Wife cites to *In re Marriage of Manning,* 871 S.W.2d 108, (Mo.App.1994), noting that this Court considered a case similar to the instant case and reversed the decision of the trial court for failing to include private schooling in its child support order. In that case, this Court held that dissolution of a marriage is difficult on a child and keeping children in a private school can be essential to the welfare of the child. *Id.* at 111. However, the cost of education is a proper factor to consider, and "including costs for private education is conditional upon such education being within the financial means of the person or persons providing support." *Id.;* see *Markowski v. Markowski,* 793 S.W.2d 908, 910 (Mo. App.1990). In *Manning,* the tuition for private schooling was $2100.00 per year, while the income for the noncustodial parent preceding the divorce action ranged from $4,300.00 to $5,500.00 per month. *Manning,* 871 S.W.2d at 110–11. These numbers are distinguishable from the present case as tuition for Maddy's private school was in excess of $6,000.00 per year, while the trial court determined that Husband's gross income was $2,684.00 per month. The trial court made mention of this disparity at the conclusion of trial, noting on the record, "that it's a true sacrifice for the parties to have been sending the child to Thomas Jefferson in the past. And if the child continues to go to Thomas Jefferson, it's going to be an extraordinary expense for a couple with this standard of living."

As for the educational needs of the child, as previously recited, Husband testified that he felt it was in Maddy's best interest to attend a public school in order to obtain a more "rounded education" and interact with other people. Wife's objection to having Maddy leave the private school was related to Wife's opinion as to the traumatic effect on Maddy. Wife had no reasonable objection to the public school. Based on the foregoing and our review of the record, we are constrained to conclude that Wife has failed to prove that private schooling met any particular educational needs of her child. *Drury,* 17 S.W.3d at 611. Therefore, we cannot say the trial court committed error in failing to include the cost of the private school in the child support Husband was ordered to pay. Point denied.

In her second point, Wife alleges trial court error in dividing the marital property claiming that there were no reasons for the division of property to be unequal and the trial court made mathematical and procedural errors in dividing the property in favor of Husband. The property of Husband and Wife consisted of the marital home, the parties' fabric store, household items, personal effects, and a stock market account Husband had opened in 1994 which had a value of over $109,873.00. In its detailed, final judgment, the trial court first set out its division of marital property by dividing all of the property except the stock market account. After subtracting the debt associated with the marital property, Wife was left with property valued at $71,297.00 and Husband with property valued at $118,524.00. The trial court then ordered that $23,613.50 (half of the difference of the property awarded Husband and Wife) plus an additional $3,180.47 be deducted from the stock market account and awarded to Wife. The remaining money in the stock market account was then evenly split between Husband and Wife. This division left Husband with approxi-

mately 57% of the marital estate, while Wife received 43%.

In dissolving a marriage, the trial court awards each spouse his or her non-marital property, then divides the remaining marital property and debts in a reasonable manner after considering all relevant factors enumerated in section 452.330, RSMo Cum.Supp.1998. *Pahlow*, 39 S.W.3d at 91. The trial court is vested with great flexibility and discretion in dividing the property. *Id.; Rivers v. Rivers*, 21 S.W.3d 117, 123 (Mo.App.2000). "A reviewing court must defer to the trial court's marital property division unless it is improper under the principles of *Murphy v. Carron*, 536 S.W.2d at 32, or is an abuse of discretion." *Pahlow*, 39 S.W.3d at 91. The challenging party bears the burden of demonstrating error on the part of the trial court. *Brown v. Brown*, 14 S.W.3d 704, 706 (Mo.App.2000). The decision of the trial court will not be disturbed unless the division of property is so unduly weighted in favor of one party that it amounts to an abuse of discretion. *Id.*

When dividing the marital property, the trial court must consider all relevant factors including: (1) the economic situation of each spouse when the property is divided, while considering the desirability of awarding the marital home to the custodial parent; (2) how each spouse contributed to the acquisition of marital property; (3) the value of non-marital property awarded to each spouse; (4) the conduct of each spouse during the marriage; and (5) the custodial arrangements for the minor children. *Nelson v. Nelson*, 25 S.W.3d 511, 517 (Mo.App.2000); § 452.330.1, RSMo Cum.Supp.1998. However, the trial court may attach the amount of weight to each of these it deems appropriate, and these factors are not exclusive. *Brown*, 14 S.W.3d at 707. "The division of marital property need not be equal, but must only

be fair and equitable given the circumstances of the case." *Nelson*, 25 S.W.3d at 517. This Court will presume that the trial court considered all evidence when dividing the marital property and believed the testimony and evidence consistent with its judgment. *Id.* at 518; *see also Brown*, 14 S.W.3d at 707.

In looking at the five factors enumerated above and applying them to the facts of the case, we note that Husband's income from the parties fabric store in 1999 had declined to approximately $32,200.00, while Wife's income was roughly $19,800.00. Each party worked outside of the home during the marriage. Although an argument could be made that Husband contributed more to the acquisition of the parties' stock market holdings, the funds for the stock market account were derived from marital property and were treated as such. Each party was also awarded a small amount of non-marital property and there was no argument from either side regarding any misconduct of the other during the marriage. As for custody of Maddy, Wife was given primary physical custody while Husband and Wife were each granted joint legal custody. Wife received the marital home. Having considered the foregoing statutory factors, we conclude that neither party was heavily favored over the other with regard to the division of marital property.

In our review of the transcript and the trial court's very detailed judgment, we do not discern that the trial court specifically intended to evenly divide the property. Wife did not request findings of facts and conclusions of law pursuant to Rule 73 .01(c), and the trial court made no findings of fact as to its basis for dividing the marital property in the manner in which it did. "All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the

result reached." Rule 73.01(c); *see also Thompson*, 24 S.W.3d at 755. Reviewing the record in this manner, as we must, we cannot say that the trial court abused its discretion in dividing the marital property. Point denied.

The judgment is affirmed.

PREWITT, J., concurs in part, dissents in part, in separate opinion.

RAHMEYER, J., concurs.

PREWITT, Judge, concurring in part and dissenting in part.

I agree with the principal opinion, except as to the cost of the private schooling for the parties' child. In *Drury v. Racer*, 17 S.W.3d 608 (Mo.App.2000), which appears to me to be the case upon which the majority rely, the child was not enrolled at a parochial school during the parties' marriage. *Shiflett v. Shiflett*, 954 S.W.2d 489 (Mo.App.1997), which *Drury* appears to primarily rely on, involved college expenses, not a private elementary school that the child had been attending during the parties' marriage.

The principal opinion here determines that Appellant's point has no merit because "Wife has failed to prove that private schooling met any particular educational needs of her child," citing *Drury*. I do not agree with the principal opinion or *Drury* that the proper test for determining whether a court should order private schooling over the wishes of one parent is when such schooling will meet the particular educational needs of the child. That may have been true under the circumstances in *Drury* and *Shiflett*, but that is not true here or in this District's decision in *In re Marriage of Manning*, 871 S.W.2d 108 (Mo.App.1994).

I have every confidence that the public schools can provide the educational needs of most, if not any, child; however, as we noted in *Manning*, "Dissolution is difficult for a child. Not allowing the child to continue at the school she has been attending would make it more so. Allowing children to continue at a private school can be 'a condition essential to the welfare of the [child]'." *Id.* at 111.

I do not see this as an issue of "particular educational needs," but as one of making the dissolution trauma as minimal as possible for the child. I am a great believer in public education and think that in most circumstances a court should not order a party to pay all or part of the cost of private schooling over his or her wishes, except where the initial decision to send the child to private school was made by both parents. Also, in this case, I am not convinced that the financial circumstances of the parties would forego keeping the child in the school that she has always attended. For these reasons, I respectfully dissent in part.