**In re Marriage of Ronda Gail KREUTZER, Petitioner–Respondent,**

**and**

**Curtis Scott Kreutzer, Respondent–Appellant.**

**No. 23490.**

Missouri Court of Appeals, Southern District, Division Two.

July 11, 2001.

---

335

Stephen P. Carlton, Carlton Law Firm, Carthage, for appellant.

John J. Podleski, Crandall & Podleski, P.C., Carthage, for respondent.

RAHMEYER, Judge.

This is a dissolution of marriage action filed by Ronda Gail Kreutzer ("Wife") against Curtis Scott Kreutzer ("Husband"). The parties married on April 28, 1979 and separated on July 24, 1998. They had two children: Russell Alan, born March 20, 1981, and Rachel Marie, born November 12, 1984. Wife was employed as a school secretary at the time of trial, a job she had for thirteen years. Husband was a pilot. The trial court dissolved the marriage, divided the property and debts,

and awarded Wife maintenance. The court entered a custody and visitation plan based on the parties' agreement that Husband shall be the primary physical custodian of the children (who were ages eighteen and fourteen at the time of trial), and ordered Wife to pay child support. The court ordered Husband to pay a portion of Wife's attorney fees. Husband appeals the portion of the judgment awarding Wife maintenance and attorney fees.

■ Before addressing Husband's arguments on appeal, we must address a jurisdictional argument raised by Wife. She alleges that this court is without jurisdiction to hear this appeal because Husband's Notice of Appeal was not timely filed. We disagree.

A notice of appeal must be filed within ten days after a judgment becomes final. Rule 81.04(a).[1] The controversy here surrounds the date upon which this judgment became final. The trial judge signed the judgment dissolving the marriage on December 10, 1999. On December 30, 1999, Wife filed a motion to reconsider the child support ordered. This motion was timely under Rule 78.04, which allows after-trial motions to be filed within thirty days after the entry of the judgment. If no ruling was made on this motion it would have been deemed overruled on March 29, 2000. The trial judge made a docket entry on January 27, 2000 as follows: "No action to be taken."[2] Husband filed his Notice of Appeal on February 14, 2000. Wife contends that is a late filing. Wife takes the position that the docket entry of January 27, 2000 was a ruling on the motion, there-

by making the judgment final on January 27, 2000. *See* Rule 81.05(a)(2)(B). Husband alleges that the docket entry of January 27, 2000 is too vague to be a ruling. We agree.

Rule 81.05 provides that for purposes of determining when an appeal can be taken after post-trial motions have been filed, a judgment becomes final the earlier of "the date of ruling of the last motion" or "[n]inety days from the date the last timely motion was filed[.]"[3] Rule 81.05(a)(2). The question, then, is whether the January 27, 2000 docket entry constituted a ruling on the after-trial motion then pending. We determine it did not.

The docket entry resolved nothing. It merely let any person reading the docket sheet know that no action was being taken that day. It did not foreclose the possibility that action on the case would be taken later. Given that there were approximately sixty days remaining during which the trial judge could rule on the pending motion before it was automatically overruled by Rule 81.05(a)(2)(A), this would not be an unreasonable reading of the docket entry.

■ A ruling must make some sort of determination in the case. For a judgment to be final for purposes of appeal, all issues must be disposed of and nothing may be left for future determination. *City of St. Louis v. Hughes*, 950 S.W.2d 850, 852 (Mo. banc 1997). This docket entry was vague and had virtually no meaning. It made no disposition of the pending issue. The docket entry of January 27, 2000

---

1. All rule references are to Supreme Court Rules (2001), unless otherwise stated.

2. This docket entry is handwritten and is signed. The signature is illegible. The parties seem to agree it is the trial judge's signature, and we find no reason not to assume the same.

3. If the after-trial motions are ruled on within thirty days from the date the judgment was entered, the judgment is final for purposes of appeal thirty days after the entry of judgment. Rule 81.05(a)(2)(B).

did not constitute a final judgment for purposes of appeal.

The trial judge did not make a specific ruling on the pending motion before it was automatically overruled on March 29, 2000. Therefore, the judgment was final on March 29, 2000. *See* Rule 81.05(a)(2)(A). The Notice of Appeal was due April 8, 2000. Husband filed his Notice of Appeal on February 14, 2000. That early filing is of no concern, as Rule 81.05(b) allows a Notice of Appeal filed early to be considered as filed immediately after the judgment becomes final for purposes of appeal. Respondent's challenge to this court's jurisdiction is denied.

Husband's first point on appeal addresses the maintenance awarded to Wife. The trial court awarded Wife non-modifiable maintenance of $500 per month. Husband's first Point Relied On reads as follows:

> The trial court committed reversible error by awarding to Wife maintenance of $500.00 per month, non-modifiable in that the award was an abuse of discretion and not supported by substantial evidence in that the income of the wife and the property awarded to her are adequate to satisfy her reasonable needs, Wife is employed, was awarded substantial property and $47,271.00 cash.

The trial court's judgment will be reversed only when there is no substantial evidence to support the award, it is against the weight of the evidence, or the trial court erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).[4] In reviewing the trial court's judgment we must keep in mind that we view the evidence in favor of the trial court's judgment and disregard all contrary evidence. *In re Marriage of Nored*, 971 S.W.2d 328, 329 (Mo.App. S.D. 1998). We defer to the trial court's decision even if the evidence could support a different conclusion. *Id.* Credibility issues are those for the trial judge to resolve, and we will assume all factual issues were resolved in favor of the judgment entered. *Id.*

Husband's first Point Relied On arguably raises a couple of issues on appeal. However, his argument under this point is limited to whether Wife qualified for maintenance. In the argument portion of his brief he does not challenge the trial court's order that maintenance be non-modifiable. Arguments raised in the Point Relied On, but not addressed in the argument portion of the brief are deemed abandoned. *Calarosa v. Stowell*, 32 S.W.3d 138, 144 (Mo. App. W.D.2000). *See also* Rule 84.04(e) and 84.13(a). As a result, any point on appeal challenging whether the maintenance should have been non-modifiable is waived.

An award of maintenance is governed by § 452.335.[5] The spouse seeking maintenance must show that she or he lacks sufficient property, including marital property apportioned to that spouse, to provide for her or his reasonable needs and that the spouse is unable to support herself or himself by appropriate employment. § 452.335.1; *Nored*, 971 S.W.2d at 329.

After it is determined that maintenance is warranted, § 452.335.2 sets forth factors that should be considered in determining the amount of maintenance. Those factors are:

---

**4.** *Murphy* interpreted the provisions of Rule 73.01(c). The provisions of that Rule now appear, in essentially the same form, in Rule 84.13(d).

**5.** All references to statutes are to RSMo 2000, unless otherwise indicated.

(1) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(2) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) The comparative earning capacity of each spouse;

(4) The standard of living established during the marriage;

(5) The obligations and assets, including the marital property apportioned to him and the separate property of each party;

(6) The duration of the marriage;

(7) The age, and the physical and emotional condition of the spouse seeking maintenance;

(8) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance;

(9) The conduct of the parties during the marriage; and

(10) Any other relevant factors.

§ 452.335.2. Although Husband's argument seems to be only that no maintenance should have been awarded, some of Husband's arguments relate to the second question, that of whether the amount of maintenance awarded was appropriate. We will address all of the arguments properly raised by Husband.

The trial court found that Wife has a gross income of $992.00 per month and that her reasonable living expenses are $1,522.00 per month, leaving a shortfall of $530.00 per month. The trial court found that Wife has very little opportunity to

obtain better employment. Further, the trial court found the following:

The Court further finds that [Husband] embarked on a course of conduct to liquidate marital assets prior to and during the separation of the parties. Thereafter, [Husband] used the proceeds of the liquidation to purchase "toys" for his use including a large outbuilding-shop constructed at the marital home, a dragster trailer with expensive accessories and a 1992 Chevrolet Suburban vehicle. These funds would have been available for distribution as marital property to assist [Wife] in providing for her reasonable needs.

These findings were supported by substantial evidence and were not against the weight of the evidence.

Husband argues that Wife's expenses of $1,522.00 per month are not reasonable. His specific claims of error revolve around her car payment and her health insurance expense. Husband contends that Wife should not be allowed to claim her car payment as an expense for purposes of maintenance and receive the car loan debt as her debt on the property distribution. Husband cites no authority for this proposition. Arguments without authority present nothing for review. *Kent v. Charlie Chicken, II, Inc.,* 972 S.W.2d 513, 516 (Mo. App. E.D.1998).

Husband's argument does not deny that Wife actually has a car debt each month that she is obligated to pay. Her monthly debts must be considered in deciding whether she can meet her reasonable needs without maintenance. That she was also assigned this debt in the property division is a different matter. Husband's argument, stated another way, is that a spouse should never be allowed to claim a debt he or she is assigned in the divorce as a reasonable expense when considering maintenance. This is contrary to Missouri

law that requires a court to divide debts and requires a court to consider a party's reasonable needs when determining whether maintenance is necessary. *See* § 452.330.1 and 452.335.1(1). If Husband were correct it would mean that a spouse who receives the marital home with a mortgage on it could not claim the monthly amount of that mortgage as a reasonable expense for maintenance purposes. We do not agree with this logic. It was correct to consider Wife's monthly car loan payment in determining whether she is entitled to a maintenance award.

Husband also disputes Wife's claim of health insurance as a reasonable expense. Wife admits that she no longer has this expense as Husband was ordered to provide health insurance for the children. Wife's employer pays for Wife's health insurance; however, Wife testified that she had cancer and catastrophic insurance that was separate from what was provided by her employer. There was evidence that she still has some expense, albeit undefined, for cancer and catastrophic insurance.

We do not find the fact that Wife's employer pays her health insurance to require a reversal of the maintenance award. Wife did not claim any expense for child support on her Income and Expense Statement. The trial judge ordered her to pay $294.00 per month for child support. Therefore, even with deleting the health insurance expense of $152.00 per month entirely, Wife is $142 more in the negative than found by the trial court. Because Wife does not have the ability to meet her reasonable needs, it is not error to award her maintenance.

█ Husband argues that as part of the divorce decree Wife was awarded enough cash to provide for her reasonable needs. The trial court ordered Husband to pay to Wife $47,271.00 as part of the property distribution. Husband ignores that Wife also was ordered to pay $29,299.00 in marital debt. In addition, Husband received the marital home. Thus, Wife no longer owned a home. A spouse is not required to deplete her assets before she can qualify to receive maintenance. *Witt v. Witt,* 930 S.W.2d 500, 503 (Mo.App. W.D.1996). The cash award does not require reversal of the maintenance ordered.

Husband also argues that Wife was under-employed and that there was no evidence to support the trial court's finding that Wife has very little opportunity to obtain better employment. Wife had been at her current job for thirteen years at the time of the trial, presumably with Husband's consent as they had been married that entire time. She earns retirement with her current job. She quit her prior job as an executive secretary when their first child was born. She had also worked for a lawyer in town. She helped Husband manage an airport during the marriage. Wife testified that she did not have an opportunity to further her education because she was supporting Husband's career by working in the airport. No evidence was presented indicating that Wife was capable of earning more money. Wife attempts to earn more money by selling Avon, sewing, and officiating soccer games, but her income from those endeavors is nominal. The statute requires a court to look at what a person can earn through "appropriate employment." § 452.335.1(2). It has been suggested that means employment "appropriate to [a person's] skills and interests." *Witt,* 930 S.W.2d at 504. The evidence indicates that Wife sacrificed her own opportunity for better employment and earning potential so she could be the primary caretaker of the children and the home, as well as to aid Husband's career. Given the length she has been employed at her current job, and Hus-

band's tacit approval of that job for so many years during the marriage, we find that she is appropriately employed. The trial court's finding regarding Wife's employment limitations is not against the weight of the evidence.

Also relevant is the disparity between Wife's and Husband's ability to earn an income. *See* § 452.335.2(3). The trial court found that while Wife grosses $922.00 a month, Husband earns "at least" $3,500 per month. Despite Wife's subpoena, Husband did not produce his 1099 tax form for his most recent year of income. Husband's pay was based upon records generated solely by Husband. He testified that he used $3,500 as his gross monthly income on his Form 14 for child support purposes because that was the figure Wife used for Husband's income on her Form 14. We leave credibility issues to the trial court to decide, and presume all factual determinations were made in accordance with the judgment. *Nored,* 971 S.W.2d at 329.

■ Husband's higher earning capacity is also indicated by the fact that he had purchased a great deal of personal property since separation, including, in part, a pool table that Husband admits was not a necessity. He also has expensive hobbies of drag racing and airplanes. Wife testified that Husband had earned $40,000 a year consistently in prior years. "A gross and permanent disparity between the parties' ability to work and to earn a living is also a sound reason for a maintenance award." *Witt,* 930 S.W.2d at 504.

Other relevant factors are the length of the marriage and conduct of the parties during the marriage. *See* § 452.335.2(6), and (9). The parties were married approximately twenty years. The trial court made extensive findings of Husband's liquidation of marital assets. Husband unilaterally decided to buy their son a drag-

ster. Wife disapproved of this purchase because it was so expensive and they were needing to save for the son's college. Husband charged a great deal of these expenses on the parties' credit cards. This eventually led to the parties' separation. Husband admits to spending $5,000 on parts for the dragster alone. In addition, during separation Husband paid $14,500 cash for a Suburban, $10,300 for a trailer, $6,000 for an airplane, and $3,000 for an aluminum block (related to his airplane hobby). He cashed in his IRA, receiving approximately $24,000, and incurring a $2,400 penalty. During separation he used the IRA proceeds, along with cash he had on hand, to build a shed to work on his airplanes.

■ As the trial court pointed out, all these expenditures of marital funds cut into the marital property available to Wife to assist her in meeting her reasonable needs. The trial court could have justifiably considered Husband's expenditures as marital misconduct. Marital misconduct that places extra burdens on the other spouse should be taken into account when fixing an amount of maintenance. *In re Marriage of Baker,* 986 S.W.2d 950, 956 (Mo.App. S.D.1999).

Overall, Wife does not have sufficient income from appropriate employment to meet her needs. She has $992.00 per month gross income and, without the health insurance cost and with the child support she was ordered to pay, she has $1,664.00 in expenses. This means she has $672 in expenses that she cannot pay. The evidence supports a finding that Wife is entitled to receive maintenance. The evidence also supports the amount of maintenance awarded. Husband's challenge to the maintenance award is denied.

■ Husband's second claim of error is directed towards the trial court's award of

$4,000 in attorney fees to Wife. Husband argues this award is error for several reasons, all of which can be summarized as saying that Husband believes Wife can pay her own attorney fees without his assistance.

■ Section 452.355 allows an award of attorney fees in a dissolution action after the trial court considers all relevant factors, including the financial resources of the parties, the merits of the case, and the actions of the parties during the pendency of the case. § 452.355.1. The trial court is presumed to be an expert on attorney fees. *Beckman v. Beckman,* 545 S.W.2d 300, 303 (Mo.App.1976). We will not reverse the trial court's award of attorney fees absent an abuse of discretion. *Halupa v. Halupa,* 943 S.W.2d 272, 278 (Mo.App. E.D.1997). We find no such abuse of discretion.

As pointed out above, Wife earns substantially less than Husband. Wife presented evidence that she had to borrow substantial sums of money to pay her living expenses. Whatever monies she had during separation had been spent on her living expenses and could not be used to pay her attorney fees. Husband was less than open about his income, but showed no lack of ability to purchase what he wanted during the pendency of the action. The evidence, therefore, indicates that Wife did not have the ability to pay her attorney fees from her earnings, whereas Husband did have access to funds that could be used for this purpose. Although Wife was awarded cash from Husband to equalize the property distribution, that those funds may have been sufficient to pay her attorney fees does not necessarily end the inquiry.

First, it should be recognized that the trial court sanctioned Wife for taking documents concerning the pending litigation from Husband's possession. The court did this by refusing to award Wife all of her attorney fees. Wife claimed she had attorney fees in the amount of $5,972.50; the trial court sanctioned her $1,972.50 for her actions. Therefore, some consideration was given to Wife's conduct.

Second, Husband's conduct in refusing to produce documents pursuant to a subpoena for his 1099 tax form could be a basis for awarding Wife attorney fees. This is information Husband should have produced. The trial court could have believed this increased Wife's attorney fees.

Third, Husband's extravagant purchases and financial misconduct during separation could, along with the above facts, support an award of attorney fees. As discussed above, the trial court believed Husband's purchases served to limit Wife's access to marital funds. Evidence supports that belief.

■ Husband argues that the evidence presented by Wife on her attorney fees was insufficient to support the award. Because the trial court is an expert on attorney fees, and familiar with the issues involved, it can fix the amount of attorney fees without the aid of evidence if necessary. *Beckman,* 545 S.W.2d at 303. The trial court had sufficient information on which to base its attorney fee award. That award was not an abuse of discretion. Point II is denied.

The trial court's judgment is affirmed.

BARNEY, C.J., and PREWITT, J., concur.