In re the Marriage of Teresa R. **KIRKWOOD, Respondent,**

v.

**Michael M. KIRKWOOD, Appellant.**

No. 24347.

Missouri Court of Appeals, Southern District, Division I.

June 11, 2002.

---

James R. Royce, Springfield, for Appellant.

Ralph w. Gilchrist, Bolivar, for Respondent.

ROBERT S. BARNEY, Chief Judge.

Michael M. Kirkwood ("Husband") appeals from the amended judgment of the Circuit Court of Polk County, dissolving his marriage with Teresa R. Kirkwood ("Wife"). Husband raises six points on appeal, discussed below.

Husband and Wife were married on September 30, 1978. On May 9, 2000, the parties separated and on May 12, 2000, Wife filed a petition for Dissolution of Marriage seeking disposition of the couple's marital property and separate property, maintenance, attorney's fees, and child support for the couple's only surviving child, Cheryl, born September 20, 1983. Wife also filed a "Motion for Temporary Child Support, Maintenance, and Attorney Fees, Pendente Lite." [1]

At trial, Wife testified that Husband was in arrears in his temporary child support payments in the amount of $1,527.86. She also testified that real estate and personal property taxes for 2000, in the approximate amount of $997.77, and Cheryl's medical bills, in the amount of $1,124.60, had not been paid.

Wife also testified that the marital home was worth $50,000.00 subject to an outstanding mortgage of approximately $23,000.00. Wife further related that Husband had cashed in a life insurance policy worth $1,800.00 in the summer of 2000 and recounted that Husband's retirement plan from Lily Tulip had a present value of $4,783.49. Wife also requested custody of Cheryl and asked that Husband be ordered to pay child support, maintenance and her attorney fees, in the amount of $5,168.10.

Husband testified that he was currently working only 30 hours a week because of a slowdown in business. Accordingly, he maintained that his current monthly gross earnings were $2,177.00. Husband related

---

1. On September 5, 2000, the trial court held a hearing on Wife's "Motion for Temporary Child Support, Maintenance, and Attorney Fees, Pendente Lite." During the hearing, Wife testified that she was currently unemployed, but looking for work and presented evidence that Husband's yearly salary was approximately $40,000.00. Husband testified that he was currently making monthly payments of $325.00 on the marital home mortgage, $399.00 for Wife's Jeep payment, $236.00 for Cheryl's truck payment, $150.00 for utilities, and other various bills totaling approximately $350.00. Husband also testified that he was then earning roughly $544.00 per week at his employment, which equated to an annual salary of $28,288.00. Following the hearing, the trial court ordered Husband to pay temporary child support of $588.00 per month, the monthly payments on the mortgage, payment on Wife's car, Cheryl's truck, utilities, and other various bills. Husband was also ordered to pay Wife's attorney fees of $1,000.00. However, the trial court did not order Husband to pay temporary maintenance to Wife.

that he had done his best to make payments directed by the trial court following Wife's motion for temporary support, but that in some months the payments exceeded the amount of money he was able to earn.

Regarding the marital home, Husband testified that he believed the fair market value of the home was $70,000.00 and that the equity in the home should be evenly divided between the parties. Husband acknowledged that he cashed in a life insurance policy worth $1,600.00 in the summer of 2000. He further testified that he was not financially able to pay Wife maintenance or her attorney fees and set out that she was presently capable of providing for her own needs without his assistance.

In its amended judgment, the trial court set out to each party certain items of non-marital personal property, specifically setting out to Husband, "[a]ny non-marital portion of Worker's Compensation Claim." The marital property was divided as follows: Wife was awarded the marital home, subject to debt, Cheryl's 1994 Ford truck, worth $8,500.00, and any other personal property currently in her possession not otherwise awarded. Husband received the proceeds of the life insurance policy he had previously cashed in, in the amount of $1,600.00, his retirement plan at Lily Tulip (now Sweetheart) worth $4,783.00, a Great Southern IRA worth $1,200.00, his 1994 Ford truck, with a value of $5,900.00, "[a]ny marital portion of a Worker's Compensation Claim," [2] and any other personal property currently in his possession, not otherwise awarded.

Additionally, Wife was ordered to pay the debt on the marital home, in the approximate amount of $23,000.00, a J.C. Penney credit card, with a minimal balance owed, and an MBNA credit card, with a balance of approximately $400.00. Husband was ordered to pay all other debts, including those previously set out.

The amended judgment also accorded Husband and Wife joint legal custody of Cheryl and Wife was given primary physical custody. Husband received "reasonable visitation" privileges. Husband was further ordered to pay Wife monthly child support in the amount of $425.00, as well as all of Cheryl's "medical, dental, optical and hospital expenses not covered by insurance." Husband was also ordered to pay Wife monthly maintenance in the amount of $350.00, and additional attorney fees in the amount of $4,150.00.

On appeal, Husband raises six points of error challenging the trial court's disposition of marital property; the award of maintenance to Wife; and its order that Husband pay all medical/health care expenses of Cheryl not otherwise covered by his insurance. He also complains the trial court erred in failing to specify his visitation privileges in the parenting plan, challenges the amount of child support, and maintains that the trial court also erred in ordering Husband pay Wife's attorney fees.

 In review of the trial court's amended judgment, this Court must affirm the decision of the trial court if we find substantial evidence to support it, it is not against the weight of the evidence, and it

---

**2.** Wife does not challenge this portion of the amended judgment. Husband is a sign technician and was injured on the job in late December of 1998. Thereafter he received weekly compensation payments totaling $5,191.92, exclusive of medical benefits. On June 22, 2000, Husband settled his Workers'

Compensation disability claim against Springfield Sign & Neon for the lump sum of $17,683.80, exclusive of prior compensation benefits and medical benefits. After payment of attorney fees and other costs, Respondent netted $12,493.36.

does not erroneously declare or apply the law. *Farley v. Farley*, 51 S.W.3d 159, 162–63 (Mo.App.2001); *In re Marriage of Turner*, 5 S.W.3d 607, 609 (Mo.App.1999). "An appellate court should set aside a judgment with caution and only with a firm belief that it is against the weight of the evidence." *Myers v. Myers*, 47 S.W.3d 403, 406 (Mo.App.2001). In reviewing the record before us on appeal, we must accept as true all evidence and inferences favorable to the trial court's judgment and must disregard all contrary evidence. *Farley*, 51 S.W.3d at 163. "The challenging party bears the burden of demonstrating error by the trial court." *Shepard v. Shepard*, 47 S.W.3d 412, 415 (Mo.App.2001).

■ In his first point on appeal, Husband avers the trial court erred and abused its discretion in dividing the marital estate because "the entirety of the award [was] so one-sided in favor of [Wife] as to have no rational basis in the evidence."

■ A trial court is given broad discretion in dividing marital property. *Myers*, 47 S.W.3d at 407. " 'Awarding one party a considerably higher percentage of the marital property than the other party is not *per se* an abuse of discretion.' " *Id.* (quoting *In re Marriage of Betz*, 880 S.W.2d 618, 623 (Mo.App.1994)). On appeal, we will interfere with the trial court's division of property only if it favors one party so heavily that it amounts to an abuse of discretion. *Id.; In re Marriage of Gibson*, 23 S.W.3d 686, 689 (Mo.App. 2000). "Equal division of property is not required, but the division of property should be reasonable, taking into account the factors enumerated in section 452.330.1." *Myers*, 47 S.W.3d at 407; *see also In re Marriage of Pahlow*, 39 S.W.3d 87, 91 (Mo.App.2001).

In dividing the marital property of Husband and Wife, the trial court must consider the following relevant factors:

(1) The economic circumstances of each spouse at the time the division of the property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of the children;

(2) The contribution of each spouse to the acquisition of marital property, including the contribution of a spouse as homemaker;

(3) The value of nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage; and

(5) Custodial arrangements for minor children.

§ 452.330.1; [3] *see also Shepard*, 47 S.W.3d at 417; *Nelson v. Nelson*, 25 S.W.3d 511, 517 (Mo.App.2000). "However, the trial court may attach the amount of weight to each of these it deems appropriate, and these factors are not exclusive." *Shepard*, 47 S.W.3d at 417. We will presume that the trial court took into account all evidence and believed such testimony and evidence that is consistent with its judgment. *Id.*

In our review of the record we are not convinced that the trial court specifically intended to evenly divide the property. *See id.* In its judgment, the trial court did not set out any findings of fact or conclusions of law in determining the distribution of marital property, nor did Husband request for the trial court to do so. "In the absence of such findings, our review is limited to a determination whether there was substantial evidence to support the trial court's decision, resolving all infer-

---

**3.** All statutory references are to RSMo 2000.

ences in favor of its ruling." *Myers,* 47 S.W.3d at 407; *Taylor v. Taylor,* 12 S.W.3d 340, 346 (Mo.App.2000). " 'All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached.' " *Shepard,* 47 S.W.3d at 417–18 (quoting Rule 73.01(c) Missouri Court Rules (2001)).

Applying the five factors enumerated above to the present case, we note that Husband earned a substantially greater income than Wife throughout the marriage. For example, in 1997 the record reveals Husband earned at least $37,000.00 from his occupation v. $7,270.78 for Wife; in 1998 Husband earned at least $34,000.00 to Wife's $7,800.00 and in 1999 Husband showed earnings of $27,000.00 v. Wife's earnings of approximately $7,600.00. In the year 2000, Husband showed earnings of approximately $37,000.00 v. Wife's earnings of $4,500.00, inclusive of unemployment benefits. At the time of trial in April of 2001, Husband was earning $2,304.00 a month for the first three months of 2001 while Wife's wages as a temporary employee amounted to $1,086.00 per month— and her job was due to terminate in April of 2001.

Each party was awarded a small amount of non-marital property, and Husband was awarded both the non-marital and marital portions of a Workers' Compensation claim. *See* footnote two, *supra.* While Wife received the marital home—she was the primary caretaker of the parties' child—she also was obligated to pay off the outstanding mortgage on the home standing in the approximate amount of $23,000.00 and was ordered to hold Hus-

band harmless from this indebtedness. Each of the parties was awarded a 1994 Ford truck. The fair market value of Husband's vehicle was approximately $5,900.00 while Wife's vehicle was valued at $8,500.00. Wife's Jeep had previously been repossessed because the payments were not made, although Husband had been ordered *pendente lite* to continue making payments.[4]

While Husband argues that much of the marital property awarded to him was used for expenses, the record does not support Husband's argument. The primary evidence presented by Husband in support of his argument was his own testimony that he cashed in the life insurance policy in question, spent funds from the Great Southern IRA, and spent part of the monies received in his Workers' Compensation award on household expenses. However, Husband could not readily identify where and in what specific amounts these monies were spent, other than to testify that he paid his own mother roughly $5,000.00 to reimburse her for past undisclosed expenses, and spent approximately $1,000.00 on repairs for his truck.

Husband is correct when he points out that "a trial court cannot include the value of a marital asset that no longer exists in its division of marital property where one spouse has used that asset for his or her living expenses following separation...." *Wright v. Wright,* 1 S.W.3d 52, 62 (Mo. App.1999). However, a trial court is also free to believe or disbelieve Husband's testimony that he used the money for living expenses. *Id.* Viewing the trial court's actions in a light most favorable to its

---

4. The Jeep, on which Husband and Wife owed approximately $8,800.00 at the time of its repossession, was later purchased by Husband's mother for $10,500.00 following its repossession. Husband explained at trial that his mother purchased the Jeep in attempt to

"save his credit." Husband and his mother acknowledged that while the Jeep had a "For Sale" sign on it, it was currently being driven by Husband's girlfriend and, occasionally, Husband.

amended judgment, it is reasonable to conclude that the trial court chose to disbelieve Husband. We cannot convict the trial court of error in awarding Husband proceeds from the life insurance policy, the Great Southern IRA, and an unspecified amount of monies from his Workers' Compensation award as marital property. *Id.* We do not find that the trial court abused its discretion in dividing the marital property. *Shepard,* 47 S.W.3d at 418. Sufficient evidence supported the trial court's division of the parties' assets. Point denied.

In his second point, comprised of three sub-points, Husband complains that the trial court erred in ordering him to pay $350.00 per month to Wife for maintenance because it failed to: (1) adequately determine the value of marital property and debt; (2) base the amount and duration of maintenance upon the present circumstances of the parties, and (3) properly consider Husband's ability to meet his own needs while paying maintenance to Wife.

An appellate court must affirm the circuit court's award of maintenance unless there is no substantial evidence to support the award, it is against the weight of the evidence, or it erroneously declares or applies the law. *Buckner v. Buckner,* 912 S.W.2d 65, 68 (Mo.App. 1995). We afford the circuit court a great deal of discretion in awarding maintenance. *Id.* In the absence of a finding that the amount is patently unwarranted and wholly beyond the means of the spouse who pays, this court will not interfere with the circuit court's award of maintenance. *Petty v. Petty,* 739 S.W.2d 738, 741 (Mo.App.1987). Husband, who contends the circuit court erred in awarding *any* maintenance to wife, bears the burden of proving the maintenance award "shocks" this court's sense of justice. *Allen v. Allen,* 927 S.W.2d 881, 885 (Mo.App.1996).

*Pahlow,* 39 S.W.3d at 93 (quoting *Burnett v. Burnett,* 18 S.W.3d 27, 29 (Mo.App. 2000)). In determining whether or not to award maintenance, the trial court is governed by section 452.335; *Pahlow,* 39 S.W.3d at 93. "The spouse seeking maintenance must show that she or he lacks sufficient property, including marital property apportioned to that spouse, to provide for her or his reasonable needs and that the spouse is unable to support herself or himself by appropriate employment." *In re Kreutzer,* 50 S.W.3d 334, 337 (Mo.App. 2001). "After it is determined that maintenance is warranted, § 452.335.2 sets forth factors that should be considered in determining the amount of maintenance." *Id.*

Applying these factors to the present case, we note that while Wife was awarded the marital home, she was also ordered to pay the outstanding mortgage on the home and was not provided with any other substantial property to provide for her reasonable needs. Wife testified that while she was currently employed, the job was seasonal and she expected to be terminated very shortly. She also provided testimony from her employer who confirmed that Wife would soon be released from her job, even though there was a possibility that she could resume the seasonal position in October of 2001.

Meanwhile, evidence of Husband's employment revealed that his income was at least twice as much as Wife earned, and prior to the litigation of the parties Husband, who was described as a "workaholic," had also worked other part-time jobs in addition to his regular employment. "'A gross and permanent disparity between the parties' ability to work and to earn a living is also a sound reason for a maintenance award.'" *Id.* at 340 (quoting *Witt v. Witt,* 930 S.W.2d 500, 504 (Mo.App. 1996)).

Furthermore, Wife testified at trial that living expenses for her and Cheryl amounted to $2,084.00 per month, while her income totaled only half as much, notwithstanding testimony regarding the impending discharge of her employment. While Husband was also ordered to pay child support in the amount of $425.00, thereby offsetting some of Wife's expenses, there were still expenses that Wife was unable to pay given her financial situation. Our review of the evidence leaves us with a firm conviction that Wife is entitled to receive maintenance and supports a maintenance award to Wife in the amount of $350.00 per month. *Id.* Point denied.

Husband asserts in his third point on appeal that the trial court erred in ordering him to pay for all medical, dental, optical, and hospital expenses not covered by his insurance because the evidence did not justify such an order per the statutory factors set out in section 454.603. *See infra.* Husband's argument seems to center around the fact that given all the other expenses he was been ordered to pay by the trial court, the evidence does not support a finding that he should be responsible for all of Cheryl's medical expenses not covered by his insurance.

Under section 454.600, the trial court is required to make a finding as to the availability of a health care plan for any minor children and designate responsibility to one of the parties in a dissolution action to maintain such a plan for the children. *Turner,* 5 S.W.3d at 613. Additionally, under section 454.603.5:

The court shall require the obligor to be liable for all or a portion of the medical or dental expenses of the minor child that are not covered by the required health benefit plan coverage if:

(1) The court finds that the health benefit plan coverage required to be obtained by the obligor or available to the obligee does not pay all the reasonable and necessary medical or dental expenses of the minor child; and

(2) The court finds that the obligor has the financial resources to contribute to the payment of these medical or dental expenses; and

(3) The court finds the obligee has substantially complied with the terms of the health benefit coverage.

§ 454.603.5.

The record shows that prior to the couple's separation, Husband carried health insurance on himself, Wife, and Cheryl by an insurance plan provided through work. However, immediately after the separation, Husband dropped coverage on both Wife and Cheryl. Following a hearing in September 2000 for temporary support, Husband reinstated insurance coverage for Cheryl. However, Cheryl's pre-existing skin condition was not covered under Husband's new insurance policy for Cheryl.

In its amended judgment, the trial court stated, "[t]hat [Husband] shall maintain medical insurance on [Cheryl], and [Husband is] to pay all medical, dental, optical, and hospital expenses not covered by insurance." The trial court did not expound on its reasons for ordering Husband to cover all of Cheryl's health insurance costs. No doubt the trial court considered the superior financial conditions of Husband to that of Wife. As previously set out, Husband did not request the trial court to issue findings of fact or conclusions of law in its judgment. " 'All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached.' " *Shepard,* 47 S.W.3d at 417–18 (quoting Rule 73.01(c) Missouri Court Rules (2001)). Husband has failed to demonstrate to this Court that the trial court abused its discretion in ordering Husband to cover the

uninsured medical costs of Cheryl. Point denied.

In his fourth point on appeal, Husband asseverates that the trial court erred when it made no specific, written schedule that detailed the physical custody and visitation rights of both Husband and Wife, and that the parenting plans' provisions did not satisfy the requirements found in section 452.375. Husband asserts that while both his and Wife's proposed parenting plans set forth specific dates of visitation for Cheryl, the amended judgment's parenting plan did not. Instead, as Husband asserts, the trial court entered an order that is "vague, indefinite, and unenforceable." We agree. Wife also concedes this point in her brief.

Under section 452.375.9, "[a]ny judgment providing for custody shall include a specific written parenting plan setting forth the terms of such parenting plan arrangements specified in subsection 7 of section 452.310." Section 452.310.7(1) sets out what is to be included in a proposed parenting plan, specifically "[a] specific written schedule detailing the custody, visitation and residential time for each child. . . ." The schedule should include visitation times for major holidays, school holidays, birthdays, weekend schedules, and various other details that involve the custody and visitation of minor children. § 452.310.7.

In *Brandow v. Brandow* the Western District of this Court held that:

> [a]ccording to the plain language of § 452.375.9, the trial court's judgment was required to include "a specific written parenting plan setting forth the terms of such parenting plan arrangements specified in subsection 7 of section 452.310." The trial court's judgment does not include all the terms set forth in § 452.310.7. Therefore, the trial court's judgment is not in compliance with § § 452.375.9 and 452.310.7.

*Brandow v. Brandow,* 18 S.W.3d 584, 587 (Mo.App.2000). Here, as in *Brandow,* the trial court failed to set out with specificity the visiting privileges and other rights of temporary custody with the minor child as set out in section 452.310.7. The trial court merely granted "[r]easonable visitation to [Husband]." As in *Brandow,* this does not comply with the provisions of sections 452.375.9 or 452.310.7. Husband's fourth point is meritorious and requires the reversal of that portion of the amended judgment regarding Husband's visitation privileges/periods of temporary custody. The matter is remanded with instructions for the trial court to enter a specific and written parenting plan that complies with the provisions of section 452.375. In doing so, the trial court may take additional evidence on this issue.

In his fifth point, Husband contends the trial court erred when it ordered Husband to pay Wife monthly child support in the amount of $425.00. He maintains this amount was contrary to the clear weight of the evidence and the requirements of Form 14. In particular, he first complains that the trial court should have given him an additional $3.00 credit ($78.00 v. $75.00) on lines 6c of Form 14 for monthly health insurance premiums he pays for the minor child. Secondly, he argues entitlement to a credit on line 6d of Form 14 for "uninsured extraordinary child rearing costs" arising from monthly "extraordinary medical costs" in the amount of $164.00 due to Cheryl's skin condition, together with her regular and monthly dental expenses in the amount of $16.00. He then seeks credit under line 10 of Form 14 for the combined and foregoing additional child-rearing costs per lines 6c and 6d. Lastly, he maintains that he was entitled to "substantial overnight visitation

with the minor child," yet, he was not accorded an adjustment on line 11 of Form 14 for such overnight visitation or custody.

 The trial court has broad discretion in ordering child support. *Keller v. Keller,* 18 S.W.3d 589, 593 (Mo.App. 2000). "Supreme Court Rule 88.01 establishes a rebuttable presumption that child support calculated pursuant to Form 14 is the amount to be awarded by the trial court." *Waite v. Waite,* 21 S.W.3d 48, 52 (Mo.App.2000). "A written finding that the Form 14 amount, after considering all relevant factors, is 'unjust or inappropriate' will overcome this presumption." *Id.* "The trial court is not required to enter written findings which include the numbers used to calculate the child support as well as the factors which make the Form 14 amount inappropriate." *Id.* At trial, both Husband and Wife submitted a proposed "Child Support Amount Calculation Worksheet" otherwise known as Form 14.[5] The major difference in their proposed Form 14's is that Wife calculated Husband's monthly gross income at $3,320.00, while Husband submitted that his monthly gross income was $2,177.00. The trial court did not adopt either Form 14 and, instead, created its own Form 14. In determining whether the trial court correctly calculated the presumed child support amount "we review the calculation to ensure that not only it is done accurately from a mathematical standpoint, but that the various items and their amounts were properly included in the calculation and supported by substantial evidence." *Nelson,* 25 S.W.3d at 521.

In its Form 14, the trial court calculated Husband's monthly gross income at $2,750.00. This latter amount was within the range of income covered by the evidence. The trial court also added $350.00 per month to Wife's income for the maintenance she was to receive from Husband while crediting Husband $350.00 for the maintenance he was ordered to pay Wife. The trial court further credited Husband $75.00 per month for insurance payments under line 6c of Form 14, but made no allowances for any uninsured extraordinary child rearing costs under line 6d of Form 14.

In his brief, Husband correctly points out that the evidence at trial established that the cost of health insurance for Cheryl was not $75.00 per month, but $78.00 per month. Further, Husband also correctly sets out that Wife's testimony at trial confirmed that uninsured medical costs for Cheryl were $164.00 per month due to medication and doctor visits regarding a skin condition not covered by Husband's health insurance for Cheryl. Husband theorizes that the monthly amount of $164.00 he had been ordered to pay is an extraordinary medical expense which constitutes an uninsured extraordinary child rearing costs and should have been factored into the trial court's Form 14 calculations at line 6c. He makes a similar argument regarding Cheryl's dental expenses in the monthly amount of $16.00.

In her brief, Wife concedes that the trial court should have credited Husband for his health insurance premium costs under line 10 of Form 14. However, regarding extraordinary child expenses, Wife argues that the trial court "could have inferred that the child's extraordinary child expenses could be covered by insurance for her skin condition and therefore omitted that extraordinary expenses [sic]."

In our review of the record, we find that the evidence clearly establishes Husband's health insurance costs for Cheryl are

5. *See* Rule 88.01 and Civil Procedure Form No. 14, Missouri Court Rules (2001).

$78.00 per month, and not $75.00 per month as set out by the trial court.

We also find that Cheryl has "extraordinary medical costs" of $180.00 per month-that is, $164.00 for skin condition and $16.00 for dental work—that the trial court ordered Husband to pay when it provided that he was to be responsible for all "medical, dental, optical and hospital expenses not covered by insurance." In Wife's "Second Amended Income and Expense Statement" she lists Cheryl's monthly medical expenses as $164.33 per month and listed $16.00 per month for dental work. Wife also testified at trial that these were regular monthly medical expenses. "In our view, the purpose of factoring in uninsured extraordinary medical expenses in child support calculations is to relieve the custodial parent from having to continually pursue the non-custodial parent, under a separate order, for payment of expenses that are so predictable ... that they are likely to recur." *Keller*, 18 S.W.3d at 599. The trial court erred and abused its discretion when it failed to include $180.00 per month as uninsured extraordinary child rearing costs under line 6d of Form 14. *Id.* The trial court also abused its discretion and erred in failing to credit Husband $258.00 (the combined total of lines 6c and 6d) under line 10 of Form 14 for "Credit for Additional Child–Rearing Costs."

Also, since on remand the trial court is required to set out a specific visitation schedule for Husband, the trial court may be required to grant Husband an "Adjustment for a portion of the Amounts Expended During Periods of Overnight Visitation or Custody," per line 11 of Form 14.

We reverse that portion of the trial court's amended judgment ordering Husband to pay Wife monthly child support in the amount of $425.00 and remand the cause for further proceedings on this issue,

consistent with our above determination. *Id.* In doing so, the trial court is free to hear additional evidence on this issue.

Lastly, in his sixth point on appeal, Husband avers trial court error and abuse of its discretion in ordering him to pay the entirety of Wife's attorney's fees totaling $5,168.00.

Under section 452.355.1, a trial court may award attorney's fees to one party after giving due consideration to all relevant factors. *Myers*, 47 S.W.3d at 410. "The two factors that the trial court should consider are 'the actions of the parties during the pendency of the action, and the parties' financial situation.' " *Id.* (quoting *Thill v. Thill*, 26 S.W.3d 199, 208 (Mo.App. 2000)). "The trial court is presumed to be an expert on attorney fees." *Kreutzer*, 50 S.W.3d at 341. "The court is vested with broad discretion in awarding attorney's fees, and its ruling will be disturbed only upon a showing of abuse of discretion." *Myers*, 47 S.W.3d at 410.

Husband's argument that he should not be required to pay Wife's attorney fees based on the distribution of marital property and other expenses the trial court ordered Husband to pay consists of only one page of argument. He cites only one case that sets out the standard of review, and cites no case law or authority to support his argument. "In domestic relations cases, as in any other civil case, a point of error left unsupported by citation of relevant authority when such authority is available, justifies an appellate court to consider the point abandoned." *Hunt v. Hunt*, 65 S.W.3d 572, 578 (Mo.App.2002); *In re Marriage of Hershewe*, 931 S.W.2d 198, 205 (Mo.App.1996). Nonetheless, we have reviewed the record *ex gratia* and find that the trial court had sufficient evidence with which to base its decision to award Wife attorney's fees, and its deci-

sion was not an abuse of discretion. *Kreutzer*, 50 S.W.3d at 341. Point denied.

The amended judgment of the trial court is affirmed in all respects except for its award of child support and except its provisions regarding Appellant's rights of visitation, which are reversed and remanded to the trial court for further proceedings consistent with this opinion.

SHRUM, P.J., MONTGOMERY, J., concur.